(108 So. 18)

## BAKER v. CONWAY. (5 Div. 925.)

(Supreme Court of Alabama.   March 25, 1926.)

**1. Schools and school districts ☞48(3)—Member of county board of education, moving to another state and acquiring definite domicile, ceased to be a "resident" of county, thereby creating vacancy in his office (Words and Phrases, "Resident"; School Law, art. 5, §§ 1, 2 [Acts 1919, p. 583]; Code 1923, § 2697).**

Member of county board of education, who went to another state, where he acquired a definite domicile under a contract to work there for four years, ceased to be a "resident" of county within meaning of Code 1923, § 2697, and hence there was a vacancy in his office within School Law, art. 5, § 1, regardless of his nominal resignation prior to expiration of his term, which vacancy was lawfully filled by appointment of successor, in view of article 5, section 2, who remained in office as lawful member of board until successor was elected and qualified or continuously if there was no such election (citing Words and Phrases, "Resident").

**2. Elections ☞188—Election to fill unexpired term of member of county board of education held invalid, where ballots failed to separate candidacies for long or short terms or to indicate for which term either of two candidates was to be voted on.**

Election to fill unexpired term of member of county board of education held invalid, where there were two candidacies for long and short terms to be filled, and nothing on ballots voted served to separate such candidacies nor to indicate to voters for which term either of candidates was to be voted on.

**3. Evidence ☞45—Court judicially knows that only one full term was to be filled at November, 1924, election of member of Chilton county board of education.**

Court judicially knows that only one full term was to be filled at the November, 1924, election for office of member of county board of education of Chilton county, and that if more than one candidate was to be voted for there must have been a vacancy to be filled for part of an unexpired term.

**4. Elections ☞267—Certificate of election is conclusively presumed to be correct on collateral attack.**

Upon all questions arising collaterally, a certificate of election is conclusively presumed to be correct, and hence must stand until set aside by a competent tribunal in a proceeding in which certificate's validity is directly attacked.

**5. Elections ☞291.**

Certificate of election, not showing which office contestant was elected to, held not to impose on contestee any burden of proof as to invalidity of contestant's alleged election.

Appeal from Circuit Court, Chilton County; G. F. Smoot, Judge.

Quo warranto by the State of Alabama, on the relation of William R. Baker, against Columbus C. Conway. From a judgment denying relief, relator appeals. Affirmed.

Grady Reynolds and Omar L. Reynolds, both of Clanton, for appellant.

L. F. Gerald and J. B. Atkinson, both of Clanton, for appellee.

The ballot here used is void for uncertainty. 20 C. J. 146; Wilson v. Blake, 147 P. 129, 169 Cal. 449, Ann. Cas. 1916D, 205; Page v. Kuykendall, 43 N. E. 1114, 161 Ill. 319, 32 L. R. A. 656; State v. Chambers, 20 Ohio St. 336; Comm. v. Dallas, 95 A. 262, 249 Pa. 560. The burden was upon appellant to show a proper election. Code 1923, § 462.

SOMERVILLE, J.   Section 2697 of the Code provides that—

"Any office in this state is vacated * * * (3) By [the incumbent's] ceasing to be a resident of the state, or of the division, district, circuit, or county, for which he was elected or appointed."

The words "reside," "residence," and "resident," as used in constitutions and statutes, have been often defined and construed by the courts. 7 Words and Phrases, First Series pp. 6147–6166. Their meaning has been variously shaded according to the variant conditions of their application. For some purposes, a merely constructive residence, resting chiefly upon the intention of the citizen, is sufficient to fix or retain his residence at a designated place. For other purposes, an actual residence is intended or required. In some cases it has been held that there must be a union of fact and intention. Tyler v. Murray, 57 Md. 418, 441; State v. Allen, 35 S. E. 990, 992, 48 W. Va. 154, 50 L. R. A. 284, 86 Am. St. Rep. 29; Pfoutz v. Comford, 36 Pa. 422; Sanders v. Getchell, 76 Me. 158, 49 Am. Rep. 606. Apt illustrations will be found in our own cases of Merrill v. Morrissett, 76 Ala. 433; Murphy v. Hunt, 75 Ala.

438; Allgood v. Williams, 8 So. 722, 92 Ala. 551.

In People v. Owers, 69 P. 518, 29 Colo. 546, the court said:

"The word 'reside' may, and sometimes does, have different meanings in the same or different articles or sections of a constitution or statute." The constitutional direction "that a district judge shall reside within his district, manifestly, was not intended for his convenience, but for the benefit of the people, whose servant he is." In this case "reside" will be held to mean "an actual, as distinguished from a legal or constructive, residence or * * * domicile."

In Merrill v. Morrissett, supra, this court said:

"Where a person has actually removed from his original domicile to another place, with the intention of remaining there for an indefinite time, and as a place of fixed present abode, the latter place is regarded as his domicile of choice, 'notwithstanding,' as observed by Mr. Story, 'he may entertain a floating intention to return at some future period.'"

[1] Unquestionably, we think, our statute requires an actual residence by the holders of public office within the political divisions for which they are appointed or elected, and which it is their duty to serve. Every consideration of policy, propriety, and public welfare points plainly to such an intendment; and our conclusion is that, when Calloway moved away from Chilton county in December, 1923, and went to Florida, where he acquired a definite domicile, to be absent "three months, six months, or it might be five years," under a contract to work there for four years, he ceased to be a resident of Chilton county, Ala., within the meaning of the statute, and that his office as member of the county board of education was thereby vacated. We do not mean to hold that any temporary absence by a public officer would have that effect. Each case must be decided on its own facts, with a due regard for the elements of intention and actual absence.

Its results, under the provisions of section 1, art. 5, of the School Law (Acts 1919, p. 583), that there was a vacancy in the office previously held by Calloway, regardless of the fact of his nominal resignation dated October 20, 1924, and accepted by the board on October 31, 1924; that this vacancy was lawfully filled by the appointment of the respondent, Conway, by the remaining members of the county board; and that Conway's tenure was effective, from the date of his qualification on November 3, 1924, until the next general election following the date of his appointment—the next election occurring on November 4, 1924, just one day later. Section 2, art. 5, of the School Law provides that "members of the county board of education shall hold office until their successors have been elected and qualified." Clearly, then, Conway remained in office as a lawful member of the board until a successor was elected and qualified; or continuously, if there was no such election.

[2, 3] The final and decisive inquiry, therefore, is: Was there a valid election of any one at the November, 1924, election, to fill the unexpired two year term of Calloway?

It appears without dispute that at that election J. M. Smith was a candidate of the Republican party for a position on the board; his previous full term being just then expired. It is without dispute, also, that the petitioner, Baker, was a candidate at that election for a position on the board, and that his name went on the ticket under the Republican emblem by virtue of a petition filed with the probate judge, and signed by 25 qualified Republican voters. The ballots voted in that election, so far as here relevant, were in this form:

| | [Republican] | [            ] |
|---|---|---|
| For Member County Board of Education Vote for Two...... | Wm. R. Baker J. M. Smith | Howard B. Oden J. C. Pattillo |

The election certificate filed in the office of the probate judge, and certified to the secretary of state, shows the following:

For Members of County Board of Education.

Wm. R. Baker received...................... 1,506 votes
J. M. Smith received...................... 1,524 votes
Howard R. Oden received................. 908 votes
J. C. Pattillo received.................... 893 votes

We judicially know that only one full term was to be filled, and that if more than one candidate was to be voted for by each voter —as the ballot prescribed—there must have been a vacancy to be filled for a part of an unexpired term. The voters' petition above referred to shows that Baker's candidacy was intended by them and by him to be for the short term—Calloway's unexpired term of two years. There was, however, nothing on the ballots voted which could serve to separate the two candidacies, for the long and short terms, respectively, nor to indicate to the voters for which term either of the two candidates, Baker and Smith, were to be voted on. The election certificate throws no light on this question, but shows merely that Baker and Smith were elected as members of the board.

In Wilson v. Blake, 147 P. 129, 169 Cal. 449, Ann. Cas. 1916D, 205, it was said:

"Upon the proposition, which is in effect declared by our statute law, that differing terms make different offices, though the title be one, the authorities are uniform, and it is sufficient to refer to Page v. Kuykendall, 161 Ill. 319, 43 N. E. 1114, 32 L. R. A. 656; Chamberlin v. Hartley, 25 A. 572, 152 Pa. 544; In re Gilleland, 96 Pa. 224; Milligan's Appeal, 96 Pa. St. 222."

In Page v. Kuykendall, supra, the Supreme Court of Illinois said:

"It is plain that where there are more offices than one to be voted for, ballots making no

designation of the office will be insufficient for uncertainty, and where there are two officers to be elected for different terms, ballots which do not designate the terms should be rejected, 6 Am. & Eng. Ency. Law, 345."

See, also, 20 Corp. Jur. 146, § 169.

In California there is a statutory provision requiring that in such cases the term for which each candidate is nominated "shall be printed on the ballot as a part of the title of the office," but the decision was based on principle as well as on the statute, and in denying a writ of mandamus to compel a canvass of the votes cast by ballots which did not thus distinguish the officers, the California court said:

"In all of those cases where the title to the office is one and officers and incumbents of the office many, as boards of supervisors, city councils, commissioners, * * * it would be impossible in any election, where more than one was to be voted for, and the terms were of different periods, to determine the expressed will of the voters without such provision." Wilson v. Blake, supra.

In Pennsylvania the same rule prevailed prior to the act of 1895 (P. L. 109), which required the designation, in such cases, of the term for which the candidates were to be voted for. In re Gilleland, 96 Pa. 224; Milligan's Appeal, 96 Pa. 222. Under the act of 1895, the court held an election, based on ballots not so designating, to be void entirely, not merely because of the statute, but because "it was impossible to ascertain from the ballots cast who of the six who received the majority of the votes cast had been elected for the unexpired term." Com. v. Clark, 94 A. 473, 249 Pa. 109; Com. v. Dallas, 95 A. 262, 249 Pa. 560. Other cases in point are cited in 20 Corp. Jur. 146, under note 46.

The case of State v. Thomas, 136 N. W. 623, 150 Wis. 190, is not to the contrary. It recognizes the general rule as above stated (State ex rel. Holden v. Tierney, 23 Wis. 430), but holds that under the language and manifest intention of the Wisconsin statutes regulating the election and the terms of office, as well as vacancies in the office, of school trustees, all of the trustees—both for long and short terms—were elected for at least one year, and were entitled to hold for a year. The intimation was that an ouster proceeding might lie after that period.

We are not advised of any statute of our own dealing with this particular situation. The well-known practice, however, has been to appropriately designate the short term and the candidate therefor, by way of distinction from the long term office. Whether or not there is a statute requiring such a designation is, of course, immaterial to the question. Such ballots are not sufficient to show an election because it is impossible to determine from them who has been elected to each of the two offices voted on.

[4,5] It is true that this is not a direct attack by contest of the election, nor by quo warranto to determine the right of the respondent to hold by virtue of an election; and true, also, that "upon all questions arising collaterally a certificate of election is conclusively presumed to be correct, and hence it must stand until set aside by a competent tribunal in a proceeding in which its validity is directly attacked." 20 Corp. Jur. 251, § 348, citing Plowman v. Thornton, 52 Ala. 559; Thompson v. Holt, 52 Ala. 491. See, also, in accord Moulton v. Reid, 54 Ala. 320, and Casey v. Bryce, 55 So. 810, 173 Ala. 129, 134. Counsel for petitioner, appellant here, would apply this principle to his own certificate of election; and the argument might be sound enough if the certificate itself showed which office he was elected to. On the contrary, it does not show it, but merely duplicates the ambiguity—the irremediable uncertainty—exhibited by the ballots. For this reason the certificate of election is without value, and does not suffice to impose upon respondent any burden of proof as to the invalidity of petitioner's alleged election.

No evidence was offered to show that the voters of Chilton county, or any of them other than the signers of Baker's petition, knew that he was a candidate for the short term; nor do we think that any extrinsic evidence—anything outside of the ballots themselves—would be competent for such a purpose.

Notwithstanding the liberality of the law, and the expressed policy of the courts, in upholding elections in the face of many and serious irregularities, we see no way to save this election, as to members of the county board of education, from the sentence of nullity expressed by necessary implication in the judgment of the trial court denying relief to the petitioner. The judgment will therefore be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.