BOLIN, Justice.
This is an appeal from an order entered by the Shelby Probate Court denying a petition to incorporate Caritas Village located in Shelby County, pursuant to § 11-41-1, Ala.Code 1975. The pivotal issue in this case involves declarations of residency. In order to meet the 300 inhabitants required for incorporation under § 11-41-1, the petitioners included 51 people actually living in Caritas Village along with 296 people who had declared that they have designated Caritas Village as their place of residence pursuant to § 12-13-23, Ala. Code 1975. The issue is whether that is sufficient for purposes of § 11-41-1. We hold that it is not.

Facts and Procedural History

On August 30, 2012, the petitioners filed their petition in the Shelby Probate Court to incorporate Caritas Village, along with numerous affidavits and documents in support of the petition. On October 18, 2012, the probate court concluded that the petition did not comply with § 11-41-1. The probate court determined that 1) the proposed municipality had a population of less than 300; 2) the population of the proposed municipality did not constitute a body of citizens whose residences were contiguous and all of which formed a homogeneous community; 3) the application was not signed by at least 15 percent of the qualified electors residing within the limits of the proposed municipality; 4) there were not 4 qualified electors residing on each quarter of a quarter section of the platted or unplatted lands in the proposed municipality; 5) the application did not contain an accurate plat of the land to be included within the proposed corporate limits; 6) the place of residence by street and number, if available, of those living within the proposed municipality was not included; and 7) the petition did not accurately state the name of the proposed municipality.
On December 17, 2012, the petitioners filed a motion to amend their petition. On January 8, 2013, the probate court entered the following order:
“This matter came before the court on petitioners’ Motion for Leave of Court to Amend the Application and Petition to Incorporate to Cure the Deficiencies in the Application as Identified by the Judge of Probate and Request for a Hearing. The petitioners seek incorporation of a portion of Shelby County, Alabama, as a municipal corporation pursuant to Ala.Code § 11-41-1 et seq. (1975 as amended). By order entered October 18, 2012 (the ‘Prior Order’), this Court found that petitioners’ Application did not comply with Code § 11-41-1. Petitioners seek to amend their Application pursuant to § ll-41-2(b) to cure the deficiencies. Said motion for leave to amend is GRANTED. Petitioners also request a hearing on their Application and said request is DENIED because § ll-41-2(b) does not provide for a hearing at this stage of the proceedings.
“For municipal incorporation, Alabama law requires an area to have ‘a population of not less than 300, constituting a body of citizens whose residences are contiguous to and all of which form a homogeneous settlement or community.’ To reach this population requirement, petitioners filed 205 affidavits that were made pursuant to [§ 12-13-23, Ala.Code 1975] (the ‘Act’). In Exhibit A to the Amended Application, affiant Jason Terrell states that 51 persons reside within the territory subject to the Application and an additional 296 persons have declared their residency *1240 within the area by filing affidavits pursuant to the Act. It is the opinion of this Court, and it is so held, that affidavits made pursuant to the Act are not sufficient to establish the population requirement of § 11-41-1. Declaring one’s legal residence is not equivalent to being domiciled in a particular place, being part of a homogeneous settlement or community and thus being part of the area’s population. Petitioners must demonstrate that there are at least 300 people domiciled in the subject area. Petitioners have failed to establish that the subject area satisfies the population requirement of the Code, that all residences of the population are contiguous, and that the subject area is a homogeneous settlement or community.
“Therefore, based on the foregoing as well as the reasons set forth in the Prior Order, the Court FINDS, and it is so ORDERED, ADJUDGED and DECREED, that the Application as amended does not comply with the provisions of Code § 11-41-1 and the Application is due to be, and is hereby, DENIED.”
(Capitalization in original.)
On January 17, 2013, the petitioners timely filed an appeal.

Standard of Review

“‘This court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.’ Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review.”
Continental Nat’l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005).

Discussion

Section 12-13-23 provides:
“(a) For the purposes of this section, the following words shall have the following meanings:
“(1) Declaration of residence. Any written document which conveys a person’s intention to designate any place within this state as his or her place of residence.
“(2) Person. Whether used in the singular or plural form, a natural person who is a citizen of the United States. When used in reference to the designation of a place of residence, the word ‘person’ shall include any dependent minor child of a person.
“(3) Place or place of residence. A physical location which is capable of habitation and may be described in any way reasonably calculated to locate the same.
“(4) Resident. A lawful citizen of this state for all legal purposes other than registration to vote or qualification for elected office.
“(b) Any person who is absent from this state on military duty, eleemosynary journey, mission assignment, or other similar venture may designate any place within the State of Alabama as his or her residence. Upon filing a notarized declaration of residence with the judge of probate of the county in which the designated place of residence is located, the person and his or her dependent children shall thereafter be considered residents of that designated place for all purposes under the law.
“(c) The judge of probate of the county, upon receipt of a declaration of residency, shall file the same within the public record of his or her office.
“(d) Notwithstanding the foregoing, a declaration of residence filed under this section shall not affect the person’s eligibility to register to vote or qualify for an *1241 elected office if that person otherwise meets the requirements of law to register to vote or to qualify for elected office.
“(e) Notwithstanding the foregoing, if a person is previously registered to vote in a district their voting rights shall continue in that district.
“(f) In the event a person has filed a declaration of residence as provided in this section and otherwise meets all requirements of law to register to vote or to qualify for elected office, then that person may also register to vote or qualify for elected office at the place of residence designated pursuant to this section.
“(g) Notwithstanding the foregoing, the filing of a declaration of residence under this section does not establish permanent residency for the person filing the declaration for the purposes of eligibility for the Alabama G.I. and Dependents’ Educational Benefit Act, Sections 31-6-1 through 31-6-17, inclusive.
“(h) Nothing in this section shall be used to change the venue of any pending civil action or for the purpose of forum shopping.
“(i) Notwithstanding the foregoing, the filing of a declaration of residence under this section does not establish permanent residency for the person filing the declaration for the purposes of qualifying for in-state tuition rates at a state-supported institution of higher education, unless the person either filed a personal income tax return with the State of Alabama or would have been required to file a personal income tax return if the person otherwise had a tax liability.”[1]
The petitioners argue that the affidavits, which included declarations of residency pursuant to § 12-13-23, satisfy the population requirement of § 11-41-1. They also argue that the probate court’s conclusions regarding contiguity and homogeneity based on the 296 persons declaring residency in Caritas Village were erroneous.
“The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Gholston v. State, 620 So.2d 719 (Ala. 1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says. IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992).”
Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996). “It is ... well accepted that this Court[, in interpreting a statute,] will give words used in a statute their ‘natural, plain, ordinary, and commonly understood meaning.’ ” Ex parte Etowah Cnty. Bd. of Educ., 584 So.2d 528, 530 (Ala.1991) (quoting Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984)). “ ‘[W]hen a term is not defined in a statute, the commonly accepted definition of the term should be applied.’” Ex parte Gadsden Reg’l Med. Ctr., 904 So.2d 234, 236 (Ala.2004)(quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003)).
Section 11-41-1 provides that an “unincorporated community” with a “population” of “300” “inhabitants” whose “residences” are “contiguous to and all of which form a homogeneous settlement or com *1242 munity” may seek incorporation as a “municipal corporation.” Section 11-41-1 goes on to provide:
“The petition for incorporation shall be submitted by the persons seeking the incorporation referendum to the judge of probate by a verified application, which shall state the proposed name of the municipality, have attached thereto and as a part thereof an accurate plat of the territory proposed to be embraced within the corporate limits, including all subdivisions into lots, blocks, streets, and alleys, within the territory, if any, and have accurate description by metes and bounds of the boundary of the territory. The application shall contain proof of residence and qualifications as electors of petitioners and of persons affected. When determining the ownership of the lands, the person, firm, or corporation assessing the property for taxation shall be accepted by the judge of probate as prima facie the owner thereof. All petitions circulated with respect to any proposed incorporation referendum shall be uniform in character. Each signer of a petition shall sign his or her name and shall have placed on the petition after his or her name his or her place of residence by street and number, if available, and the date on which the signature is affixed. The signatures attached to any petition need not be signed on one page, but each page shall have attached an affidavit by the person circulating the petition stating the number of signers on each page of the petition, that each signature signed on the page is the genuine signature of the person whose name it purports to be, and that the signature was made in the presence of the person circulating the petition.”
In Baker v. Conway, 214 Ala. 356, 108 So. 18 (1926), the Court recognized that “reside,” “resident,” and “residence” may have different meanings in different settings:
“The words ‘reside,’ ‘residence,’ and ‘resident,’ as used in constitutions and statutes, have been often defined and construed by the courts. 7 Words and Phrases, First Series pp. 6147-6166. Their meaning has been variously shaded according to the variant conditions of their application. For some purposes, a merely constructive residence, resting chiefly upon the intention of the citizen, is sufficient to fix or retain his residence at a designated place. For other purposes, an actual residence is intended or required. In some cases it has been held that there must be a union of fact and intention....
“ ‘The word “reside” may, and sometimes does, have different meanings in the same or different articles or sections of a constitution or statute.’ ”
214 Ala. at 356-57, 108 So. at 18 (quoting People v. Owers, 29 Colo. 535, 546, 69 P. 515, 518 (1902)).
In Carey v. City of Haleyville, 230 Ala. 401, 402, 161 So. 496, 498 (1935), the Court addressed a statute authorizing a municipality to issue bonds to construct schoolhouses, stating:
“Municipal corporations are voluntary associations created and built upon the voluntary assent of the community and its citizens (Montgomery v. City of Athens, 229 Ala. 149, 155 So. 551 [ (1934) ]), and a reading of the act ... is persuasive that the Legislature had this in view, and intended a broad authority in matters affecting the health, convenience, and promotion of the general welfare of the inhabitants thereof — all of which were to be sanctioned by the vot *1243 ers before the bonds could be thus issued for these purposes.”
(Emphasis added.) In City of Dothan v. Dale County Commission, 295 Ala. 131, 324 So.2d 772 (1975), the City of Dothan sought to annex territory in an adjoining county. The probate court held that the annexation was void because its irregular shape and its lack of homogeneity with the rest of the city violated the legislative intent behind annexation. This Court, reversing the probate court’s judgment, stated:
“We know of no statutory mandate that the municipal boundaries of all territories sought to be annexed must form a regular shape. Tit. 37, § 135(10) [now codified at § 11-42-2, Ala.Code 1975,] does require that such annexed territory ‘form a homogeneous part of the city or town.’ But, this is not to imply that homogeneity demands regularity of shape of the boundaries of the municipality. ‘Homogeneous’ is defined as ‘of similar kind or nature ... of uniform structure or composition ... consisting of uniform elements (as of people or groups with similar background) ...’ Webster’s Third Neiv International Dictionary, 1966.”
295 Ala. at 135, 324 So.2d at 776 (emphasis added).
City of Fultondale v. City of Birmingham, 507 So.2d 489, 491 (Ala.1987), involved a municipal annexation that included public-road rights-of-way as necessary to create contiguity with existing city limits; in holding the annexation invalid, the Court stated:
“Although Alabama law does not require that municipal boundaries form a regular shape, the legal and popular idea of a municipality in this country is ‘that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants — that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places.’ 56 Am.Jur.2d Municipal Corporations § 69 at 125 (1971).”
(Emphasis added.)
In Fort Morgan Civic Ass’n v. City of Gulf Shores, 100 So.3d 1042 (Ala.2012), a citizens’ group and a resident of an unincorporated area challenged the recent annexation of the unincorporated area, arguing that the annexation constituted a “long-lasso” annexation and that the annexation was invalid because the State did not own all the annexed property as it had stated in its petition. Justice Murdock concurred in the result and wrote separately regarding, in part, his concerns over the Court’s jurisprudence as to “long-lasso annexations.” Although the present case does not involve a long-lasso annexation, we find Justice Murdock’s discussion helpful in elucidating the nature of a community grounded in residency:
‘“Although Alabama law does not require that municipal boundaries form a regular shape, the legal and popular idea of a municipality in this country is “that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants — that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places.” 56 Am. Jur.2d Municipal Corporations § 69 at 125 (1971); City of Dothan [v. Dale County Comm’n, 295 Ala. 131, 324 So.2d 772 (1975) ]. The annexations proposed by Fultondale and Trussville do not create a collective body of inhabitants, but, rather, several bodies *1244 scattered across an area, a result we feel the legislature did not intend.’
“[City of Fultondale v. City of Birmingham,] 507 So .2d [489] at 491 [ (Ala.1987) ] (emphasis added).
“Clearly, the essential rationale of the City of Fultondale decision is that annexing a long strip of land to reach another ‘community, locality, [or] vicinity,’ one that is not ‘contiguous’ to the existing boundaries of the annexing municipality, is a use of the annexation power that was not intended by the legislature. The rationale of the Court was that a ‘long lasso’ — whether or not consisting solely of a public roadway — is an artifice to achieve the annexation into a municipality of a separate body of inhabitants and landowners who do not share with the existing municipality a community of interest grounded in their place of residency.”
100 So.3d at 1053-54 (Murdock, J., concurring in the result)(some emphasis omitted; some emphasis added).
In the present case, we agree with the probate court’s conclusion that the proposed incorporation was not a “homogeneous settlement or community” as intended under § 11-41-1. None of the 296 declarants physically reside in the area to be incorporated and governed as a municipality so as to be “inhabitants of the unincorporated community which has a population of not less than 300.”
We find the Minnesota Supreme Court’s reasoning in State v. Village of Island Lake, 130 Minn. 100, 153 N.W. 257 (1915), analogous to the present case. In Island Lake, a petition for annexation was signed by 25 persons residing in the area sought to be incorporated as a village.
“The territory so included within the village was sparsely settled, lying south of Red Lake, and is four miles long by three miles wide, containing 7,600 acred of land, only 15 of which was platted into town lots. In December following the incorporation the platted part of the village contained 19 persons, men, women, and children, and its present population is 12, 5 adults and 7 children. It never contained more than eight buildings, only five of which now remain; one thereof being the village jail. The population of the whole territory never exceeded 52 persons, though at the date of the incorporation many laborers were employed at lumber camps within the district; but their presence was temporary, during the logging season, and they had no actual residence therein....
“The contention of the Attorney General was that the incorporation of the village was fraudulently obtained, that it never contained the necessary population, and for that reason should be dissolved. The trial court sustained this contention.
“It is contended by appellants in this court that the laborers in the lumber camps were properly included in determining the ‘resident population,’ and that by including them therein the territory incorporated contained the necessary population of 140. Appellants’ contention should not be sustained. The purpose of the statutes providing for the incorporation of small villages is to further the interests, and for the better protection, of those actually residing and having a fixed abode within the territory incorporated, and not for the benefit of those who may be temporarily sojourning therein. In this particular case there were in fact only 52 actual residents within the territory. The laborers at the lumber camps were there temporarily, during the logging season, and cannot be included to make up the necessary population, for they cannot be considered or treated as residing in the *1245 territory within the meaning of the statute. These facts do not appear to have been called to the attention of the board of county commissioners at the time the petition for incorporation was presented, and the act of incorporation without the necessary population was unauthorized and illegal.”
180 Minn, at 101-02, 153 N.W. at 257-58 (emphasis added). Similar to the temporary presence of the loggers in the Minnesota case, the declarants’ statements of intent to declare residency in Caritas Village does not meet the purpose of incorporating small municipalities.
“A municipal corporation is a legal institution, formed by charter from sovereign power, erecting a populous community of prescribed area into a body politic and corporate, with corporate name and continuous succession, and for the purpose and with the authority of subordinate self government improvement and local administration of affairs of state.’ Municipal corporations are thus incorporated cities, towns, and villages created to serve the dual role as agents of the state and local governing entities. Their characteristic feature is the power and right to local self-government.”
1 James D. Cox and Thomas Lee Hazen, Treatise on the Law of Corporations § 1:17 (3d ed. 2012) (footnote omitted).
“There must exist a village, a community of people, a settlement of a town occupying an area small enough that those living therein may be said to have such social contacts as to create a community of public interest and duty requiring, in consideration of the general welfare, an organized agency for the management of their local affairs of a quasi public nature.”
State v. Town of Lake Placid, 109 Fla. 419, 426, 147 So. 468, 471 (1933).
We note that although § 12 — 13—23(b) provides that a declarant is considered a resident of the place designated in the declaration for all purposes under the law, the statute goes on to provide that the declaration will not affect the declarant’s eligibility to register to vote or to qualify for an elected office; if the declarant has been previously registered to vote in another district, his or her voting rights will continue in that other district; the declar-ant may also register to vote or to qualify for elected office at the place of declaration of residency; the declaration does not establish permanency for the purposes of certain educational benefits for members of the armed forces and their family members; the declaration cannot be used to change venue in a civil action; and the declaration does not establish permanent residency for the purpose of receiving instate tuition at state universities unless the declarant has to file an income-tax return in Alabama. One of the purposes of this statute is to allow military personnel and missionaries who are on extended travels out of state to declare residency in Alabama. However, we cannot say that the residency declarations provided for in the statute meet the requirements of § 11-41-1 because the mere declaration of residency does not indicate a body of inhabitants who share with the proposed municipality a community of interest grounded in their place of residency.
We note that the petitioners contend that the legislature intended to include those who declare their residency to be Caritas Village pursuant to § 12-13-23 as part of the 300 inhabitants “whose residences are contiguous to and all of which form a homogeneous settlement or community.” This is so because, they say, § 11-41-3 and § 11-41-5, Ala.Code 1975, provide that only persons who are qualified electors under state law and who have *1246 resided within the boundaries of the proposed municipality for three months preceding the election to incorporate may vote in the election. However, before an election can occur, the petition must meet the requirements of § 11-41-1; the inhabitants of an unincorporated community must have a population of 300 citizens who form a homogeneous settlement or community.
Based on the foregoing, we affirm the judgment of the probate court.
AFFIRMED.
STUART, MURDOCK, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
PARKER, J., dissents.
MOORE, C.J., recuses himself.

. The constitutionality of § 12-13-23 is not an issue in this case.