THOMPSON, Presiding Judge.
On March 25, 2014, JaNell Searcy Thames. (“JaNell”) filed a petition in the Montgomery Probate Court (“the probate court”) seeking to probate the will of her late husband, David Whetstone Thames (“the decedent”).[1] Regions Bank, the named executor of the decedent’s will, declined to serve as executor. In her petition, JaNell sought to be appointed the personal representative of the decedent’s estate (“the estate”).
In April 2014, Mary Elizabeth Thames (“Mary Elizabeth”), Clinton Moye Thames (“Clinton”), and David W. Thames, Jr. (“David”), the decedent’s children from a previous marriage (hereinafter referred to collectively as “the children”) filed a petition seeking to appoint David as personal representative of the estate and asking the probate court to deny JaNell’s request that she be appointed in that capacity.[2] The probate court scheduled a hearing for June 26, 2014. The record indicates that David was unable to obtain a bond as security for his serving as personal representative. On June 3, 2014, the children jointly petitioned for Mary Elizabeth’s appointment as personal representative of the estate.
The probate court conducted the scheduled hearing on the pending petitions. It also allowed the parties to submit post-hearing briefs in support of their positions. On July 22, 2014, the probate court entered a judgment admitting-the decedent’s will to probate and appointing JaNell as the personal representative of the estate. On July 29, 2014, the probate court entered an order amending the July 22, 2014, judgment pursuant to Rule 60(a), Ala. R. Civ. P. The children filed a timely post-judgment motion, which the probate court denied. The children timely appealed, raising a number of issues.
Initially, we note that the children have jointly filed a brief on appeal. Several of the arguments set forth in that brief challenge the probate court’s determination that Mary -Elizabeth was not a resident of Alabama. None of the parties have favored this court with any argument concerning the standing of all the children to assert arguments that pertain to rulings concerning Mary Elizabeth’^ claims before the probate court. We have first addressed the issues properly raised by Mary Elizabeth alone, followed by those raised by all the children.
Mary Elizabeth first argues that the probate court erred in determining that she was a not a resident of Alabama. The probate court rejected Mary Elizabeth’s request that she be appointed personal representative of the estate, finding that she had failed to demonstrate that she is a resident of Alabama. One must be a resident of Alabama in order to serve as an administrator of an estate here;[3] § 43-2-22, Ala.Code 1975, provides, in part:
*172 “(a) No person must be deemed a fit person to serve as executor who is under the age of 19 years, or who has been convicted of an infamous crime, or who, from intemperance, improvidence or ■ want of understanding, is incompetent to discharge the duties of the trust. Nor shall any nonresident of the state be appointed as administrator unless he is at the time executor or administrator of the same estate in some other state or territory or jurisdiction, duly qualified under the laws of that jurisdiction.”
(Emphasis added.) But see § 43-2-191, Ala.Code 1975, and Ex parte Adams, 168 So.3d 40, 45 (Ala.2014) (holding that an executor named in a will is not “subject to the nonresident restriction set forth in § 43-2-22”).
On June 3, 2014, the same day on which the children jointly filed their petition seeking the appointment of Mary Elizabeth as personal representative of the estate, Mary Elizabeth executed and filed in the probate court a notarized statement declaring that, “pursuant to [§ 12-13-23, Ala.Code 1975,] she declares that her place of residence is [an address in Montgomery].” Maiy Elizabeth first argues before this court that, for the purposes of § 43-2-22, her June 3, 2014, declaration was sufficient, in and of itself, to establish her status as an Alabama resident. Section 12-13-23(b), Ala. Code 1975, provides:
“(b) Any person who is absent from this state on military duty, eleemosynary journey, mission assignment, or other similar venture may designate any place within the State of Alabama as his or her residence. Upon filing a notarized declaration of residence' with the judge of probate of the county in which the designated place of residence is located, the person and his or her dependent children shall thereafter be considered residents of that designated place for all purposes under the law.”
Mary Elizabeth focuses on the second sentence of § 12-13-23(b), contending that because she executed a declaration pursuant to that Code section, she must be considered an Alabama resident. She cites In re Incorporation of Caritas Village v. Fuhrmeister, 152 So.3d 1238, 1245 (Ala.2014), as support for her argument that our supreme court has stated that a declaration made pursuant to § 12 — 13— 23(b) makes one a resident “for all purposes under the law.” However, the sentence in which that statement is made in In re Incorporation of Caritas Village, supra, contains a qualifier: “We note that although § 12 — 13—23(b) provides that a de-clarant is considered a resident of the place designated in the declaration for all purposes under the law, the statute goes on to provide that the declaration” does not entitle the declarant to be considered a resident under several aspects of the law. In re Incorporation of Caritas Village, 152 So.3d at 1245 (emphasis added). In that case, the petitioners wanted to incorporate a village, and they submitted multiple declarations executed under § 12-13-23(b). Our supreme court held, among other things, that those multiple § 12-13-23(b) declarations did not operate to demonstrate that a sufficient number of residents of the village- met the requirements for incorporation of the village.
In arguing that her § 12-13-23(b) declaration establishes her as an Alabama resident, Mary Elizabeth also cites a case from our supreme court as authority for the proposition that § 12-13-23(b) must be interpreted according to its clear language:
“ ‘ “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in *173 enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’ ”
Austin v. Alabama Check Cashers Ass’n, 936 So.2d 1014, 1026 (Ala.2005) (quoting Ex parte Master Boat Builders, Inc., 779 So.2d 192, 196 (Ala.2000), quoting in turn IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
The language of § 12-13-23(b) clearly states that a person “who is absent from this state on military duty, eleemosynary journey, mission assignment, or other similar venture may designate any place within the State of Alabama as his or her residence.” (Emphasis added.) Such a declaration made pursuant to that Code section operates to establish the “person who is absent from this state” as a resident. § 12-13-23(b). “Absence” is “[t]he quality, state, or condition of being away from one’s usual place of residence.” Black's Law Dictionary 8 (10th ed.2014). Thus, the clear language of § 12 — 13—23(b) demonstrates that a declaration made pursuant to that Code section is for the purpose of establishing the location of a person’s usual place of residence if that person is absent from Alabama for military, charitable, religious, or other, similar reasons. The legislature’s express statement of its legislative purpose in enacting § 12-13-23 supports that conclusion. As the title to the act that has been codified as § 12-13-23 reflects, the purpose of § 12-13-23 is
“[t]o authorize persons absent from the state on military duty, mission assignment, or other similar purposes to designate a place of residence in this state; and to specify that the designation would not be effective for the purpose of voter registration or qualification for elected office.”
Act No. 2012-408, Ala. Acts 2012, p. 1112. See also In re Incorporation of Caritas Village, 152 So.3d at 1245 (“One of the purposes of this statute is to allow military personnel and missionaries who are on extended travels out of state to declare residency in Alabama.”).
Mary Elizabeth has not alleged or presented evidence indicating that she is “absent” from Alabama, i.e., that she is away from Alabama, which is her usual place of residence. Also, she has not alleged or presented evidence indicating that she had been absent for any purpose set forth under § . 12 — 13—23(b), i.e., that she was temporarily living outside Alabama for military, charitable, religious, or similar reasons. Rather, the evidence indicates that Mary Elizabeth has lived and worked, as either an attorney or an accountant, in Atlanta, Georgia, for more than 20 years.[4] Given the clear language of § 12 — 13—23(b), the legislative statement of intent regarding § 12-13-23, and the evidence in the record, we conclude that Mary Elizabeth has failed to demonstrate that the probate court erred in finding that her declaration made pursuant to § 12-13-23(b) “was not sufficient in and of itself’ to establish that she is a resident of Alabama.
Mary Elizabeth next argues before this court that, assuming that her *174 declaration made pursuant to § 12-13-23(b) was not alone sufficient to establish that she. is an Alabama resident, the probate court erred in determining that other evidence in the record failed to support a determination that she is an Alabama resident. Initially, we note that, as a part of her argument on this issue, Mary Elizabeth contends that, because JaNell did not present evidence to contradict Mary Elizabeth’s testimony that she had moved to Alabama,. the ore tenus presumption. in favor of the probate court’s judgment does not apply because, she says, her testimony is undisputed. However, before the probate, court, JaNell questioned Mary. Elizabeth’s claim that she was an Alabama resident, and during the hearing she cross-examined Mary Elizabeth on that issue. The fact that JaNell did not testify or submit evidence indicating that Mary Elizabeth was not an Alabama resident does not establish that JaNell did not dispute Mary Elizabeth’s claim that she was an Alabama resident. The probate court, as the trier of fact, was in the best position during the ore terms hearing to evaluate the demeanor and credibility of the partiés and witnesses as they testified. Foster v. Foster, 86 So.3d 1009, 1014-15 (Ala.Civ.App.2012) (citing Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986)). The fact that only Mary Elizabeth testified concerning whether she was a resident of Alabama does not render the probate court’s ability to assess the credibility of that testimony ineffectual. Our supreme court has explained:
. “In- this case* the trial court observed one witness testify concerning this issue and made a determination of credibility. The fact that this determination was negative does not entitle us to ignore it. The fact remains that the trial court, having heard the testimony of one. witness, is in a better position to resolve conflicting evidence than are we who must rely solely on written documents.”
Hall v. Mazzone, 486 So.2d at 410-11. See also Devan Lowe, Inc. v. Stephens, 842 So.2d 703, 706 (Ala.Civ.App.2002) (“It is not necessary that there be a dispute or absolute contradiction in the testimony in order to invoke the ore tenus presumption. That presumption is grounded on the trial court’s superior position to evaluate the witnesses’ demeanor and credibility- and assess the weight of their testimony.”).
In arguing that the probate court erred in concluding that the evidence did not establish that she is an Alabama resident, Mary Elizabeth relies on Owens v. Ford, 451 So.2d 796, 797 (Ala.1984), in which our supreme court affirmed a judgment determining that Ford was not disqualified under § 43-2-22 as a nonresident from serving as a personal representative.
In Owens v. Ford, supra, our supreme court affirmed a probate court’s appointment of Ford, the decedent’s mother, as personal representative of the decedent’s estate. The decedent’s half brother, Owens, appealed, arguing that Ford should be excluded from appointment as a personal representative under § 43-2-22 because, he asserted, Ford was a nonresident. The evidence indicated that Ford came to'Alabama after the death of her son and rented an apartment herd. Although Ford had not registered to vote in Alabama- or obtained an Alabama driver’s license, Ford testified that she intended to reside permanently in Alabama. Our supreme court held that “a change of residence for the purpose of acquiring letters of administration requires a ‘union of act and intent.’ ” 451 So.2d at 797 (quoting In re Donovan’s Estate, 104 Cal. 623, 625, 38 P. 456, 456 (1894)). Further, in determining whether a person has moved to Alabama and intends to be a resident, the person’s motive is immaterial. Owens v. *175 Ford, 451 So.2d at 797. Thus, the supreme court concluded that the evidence in the record in that case was sufficient to support the probate court’s determination that Ford had moved to Alabama and intended to be a resident such that she should not be disqualified under §. 43-2-22 from being appointed the personal representative of the decedent’s estate. . In reaching that holding, the supreme court noted “the probate court’s discretion in determining the existence of causes of disability enumerated in Code 1975, § 43-2-22(a).” Owens v. Ford, 451 So.2d at 798.
Mary Elizabeth correctly contends that her motive in desiring, to be considered an Alabama resident is immaterial. In other words, it does not matter that her undisputed sole motivation in seeking to establish herself as an Alabama resident is so that she may be qualified to be appointed as the personal representative of the estate. One may take actions to become an Alabama resident solely because of one’s desire to serve as a personal representative of an estate; in Owens v. Ford, supra, Ford moved to Alabama with that sole purpose. In that case, our supreme court cited in footnotes two cases from other jurisdictions in which, as in that case, a person was granted authority to administer an estate after moving to the state solely for that purpose. See Owens v. Ford, 451 So.2d at 798 nn. 2 and 3 (citing In re Nix’s Estate, 66 Mont. 559, 213 P. 1089 (1923), and In re Newman’s Estate, 124 Cal. 688, 57 P. 686 (1899)).
It does not appear that the probate court questioned Mary Elizabeth’s motives or that it denied her request to be appointed personal representative of the estate because it concluded that she could not seek to become an Alabama resident solely because she wanted to administer the estate. Bather, in rejecting Mary Elizabeth’s request that she be appointed personal representative of the estate, the probate court found
“.that proper evidence was not presented by Mary Elizabeth Thames that she is now in fact a legal resident of the State of Alabama and that [her] previous filing of the ‘Declaration of Besidence’ ... pursuant to § 12-13-23, was not sufficient evidence in and of itself to convince the Court that Mary- Elizabeth Thames has in fact moved her legal residence from Georgia to Alabama.”
At the June 26, 2014, ore tenus hearing, Mary Elizabeth testified that she had lived and worked in Georgia since 1993.' Mary Elizabeth testified that, in early June 2014, a few weeks before the hearing, she had moved from her home in Georgia to live in Alabama. Mary Elizabeth stated that she had decided to become an Alabama resident when it became clear that her brother, David, could hot serve as the personal representative of the estate. 'Mary Elizabeth testified that she was living in her brother’s home in Montgomery and that there was no room' in the home for her furniture, which remained in Atlanta. Mary Elizabeth also testified that she had moved “some personal items” to Alabama and that she received mail in Alabama. She stated that she had obtained a driver’s license in Alabama and a mobile telephone with an Alabama area code and that she had renewed her passport to reflect “an Alabama address.” According to Mary Elizabeth, although she expected to work “remotely” from Alabama, she also expected to commute to Atlanta, where she remains employed. Thus, Mary Elizabeth contends that she “has done more than was done” by Ford in Owens v. Ford to demonstrate that she is an Alabama resident.
However, the probate court determined that Mary. Elizabeth had failed to present sufficient evidence demonstrating that she *176 was a resident of Alabama. The record contains sufficient evidence from which the probate court could reasonably question Mary Elizabeth’s claims that she had relocated to Alabama and that she intended to become an Alabama resident. In other words, the evidence supports a conclusion that Mary Elizabeth had not actually moved to Alabama, or that she did not do so to become a resident, i.e., that she had not demonstrated to the probate court’s satisfaction the requisite “‘union of act and intent’ ” to become a resident. Owens v. Ford, 451 So.2d at 797. The issue whether Mary Elizabeth was disqualified from serving as the personal representative of the estate as a result of her being a nonresident was a factual issue to be resolved by the probate court. Owens v. Ford, supra. Given the evidence in the record, we cannot say that Mary Elizabeth has demonstrated that the probate court abused its discretion in determining that she was not a resident of Alabama and, therefore, that she was disqualified from serving as a personal representative of the estate. Id.
Mary Elizabeth next contends in the children’s brief submitted to this court that the probate court erred in determining that she was not a residuary legatee under the will. In its July 22, 2014, judgment, the probate court determined that the named executor, Regions Bank, had refused to serve and that the residuary legatee, also Regions Bank, as administrator of a trust referenced in the will, had refused to serve. The designations of residuary legatee or principal legatee are often significant because a status as either entitles a person to preference in being appointed personal representative of the estate.[5] Section 43-2-27, Ala.Code 1975, provides:
“If no person is named in the will as executor, or if named executors, one or more, all renounce or fail to apply within 30 days after probate or are unfit persons to serve, the residuary legatee, or if he fails to apply within such time, refuses to accept or is unfit to serve, then the principal legatee, is entitled to letters of administration, with the will annexed; and, if both residuary and principal legatees fad to apply within such time, refuse to accept or are unfit to serve, then such letters may be granted to the same persons and in the same order as letters of administration are granted in cases of intestacy.”
Mary Elizabeth contends that she is both a residuary legatee and a principal legatee under the will and that, therefore, under § 43-2-27, she should have been appointed personal representative of the estate. However, Mary Elizabeth is disqualified from serving as the personal representative pursuant to § 43-2-22 because the probate court determined that she is not a resident of Alabama, and, in this *177 opinion, this court affirms that determination. Accordingly, because she cannot serve as the personal representative of the estate, the issue whether Mary Elizabeth should be given priority, as either a residuary legatee or a principal legatee, to serve as the personal representative of the estate is rendered moot.
In their brief on appeal, the children contend that the probate court erred in determining that JaNell was the principal legatee under the will and, based on that conclusion, in concluding that she should be appointed personal representative of the estate as next in priority under § 43-2-27.[6] In its judgment appointing JaNell as the personal representative of the estate, the probate court determined that JaNell had presented evidence demonstrating that she is the principal legatee under the will.
The children argue on appeal that many, if not all, of the bequests to JaNell in the will have lapsed or adeemed and that she is a contingent beneficiary of the will. At the brief ore tenus hearing on the issue of the appointment of a personal representative for the estate, some evidence was presented on that issue, and some of the evidence did indicate that at least some bequests to JaNell had adeemed or lapsed. However, the evidence pertaining to other portions of the will are not as clear. One example of a lack of clarity in the evidence is reflected in the fact that the will provided that if proceeds from a retirement account and a life-insurance policy payable to JaNell did not total $500,000, the estate was to pay the difference to ensure that JaNell received $500,000. JaNell admitted that she received $1,000,000 in life-insurance proceeds after the decedent’s death, and the children contend that JaNell’s receiving those funds negates her taking under that provision of the will. JaNell, however, stated that she paid for the life-insurance policy from which she received those proceeds. She maintains that proceeds from another, different life-insurance policy were referenced in the provision in the will awarding her $500,000 and that, because she did not receive any proceeds from that other policy, she is entitled to recover under that provision of the will.[7] As the record currently exists, however, there is not sufficient evidence to resolve that issue. Further, as JaNell testified, at the time she filed her petition in the probate court, it was not clear whether the assets referred to in the will were still in existence in the estate or whether it was possible that other assets might be discovered. The children argue a number of issues regarding what they contend should be the proper interpretation of the will, the *178 distribution of assets under the will, and whether JaNell will ultimately inherit anything under the will. However, the probate court, during the hearing,, did not receive evidence pertaining to all the assets of the estate; it instructed the parties to “highlight” the evidence in support of their positions to focus on the issue of the appointment of a personal representative.
Even assuming, for the purposes of resolving this issue, that the probate court erred- in determining that JaNell was the principal legatee under the will, and, therefore, that she was next in priority pursuant to § 43-2-27 to serve as personal representative of the • estate, any error would be harmless. Section 43-2-27 provides that, assuming the named executor and any residuary legatees or the principal legatee cannot serve, letters of administration are to be “granted to the same persons and in the same order as letters of administration are granted in cases of intestacy.” In this, case, there is no dispute that Regions Bank, which was both the named executor and the trustee of the trust that the probate court concluded was a residuary legatee, has refused to serve as personal representative of the estate. No possible legatee of the estate, other than JaNell, has sought and is qualified to serve as personal representative under Alabama law. Accordingly, assuming that JaNell is. not the principal legatee under the will, pursuant to § 43-2-27-and the facts of this case, the personal- representative of the estate would have to be appointed pursuant to the laws óf intestacy. See § 43-2-27 (providing that if. the named executor, .residuary legatee, and principal legatee will not or cannot serve, letters of administration “may be granted to the same persons and in the same order as letters of administration are granted in cases of intestacy”).
Under the statutes governing intestacy, JaNell, as the decedent’s widow, would have priority in serving as the personal representative of the estate. Letters of administration “must be granted to one of the persons herein named if the person is willing to accept and satisfactory to serve in the following order: (1) The [widower] or widow.” § 43-2-42(a), Ala.Code 1975; see also § 43—2—42(b). (containing similar language). The probate court has no discretion in appointing a personal representative of an estate if one who is seeking to be appointed has a statutory preference and is fit to serve. Ogle v. Gordon, 706 So.2d 707, 710 (Ala.1997); Burnett v. Garrison, 261 Ala. 622, 626, 75 So.2d 144, 147 (1954). Accordingly, JaNell, if she is fit to serve as the personal representative of the estate, would be the person appointed to serve as the personal representative of the .estate under § 43-2-42. As is explained, infra, we reject the children’s argument that the evidence does not support the probate court’s determination that Ja-Nell is fit to serve as the personal representative. Given that conclusion, we decline on the basis of judicial economy to reverse under a theory that JaNell is not the principal legatee and not entitled to administer the estate under § 43-2-27; even assuming that that is true, JaNell would be due to be appointed personal representative of the estate under § 43-2-42.[8]
As indicated, we reject the children’s argument that JaNell was unfit to serve as the personal representative of the *179 estate, whether she was appointed under § 43-2-27 or § 43-2-42. The children have argued that the probate court erred in failing to disqualify JaNell pursuant to § 43-2-22(a) from serving as the personal representative of the estate on the ground that she was improvident. See § 43-2-22(a) (providing that “[n]o person must be deemed a fit person to serve as executor who ... from ... improvidence ... is incompetent to discharge the duties”); and Black’s Law Dictionary 876 (10th ed. 2014) (“Improvidence” means “[a] lack of foresight and care in the management of property.”),[9] In making that argument, the children allege that, before his death,' the decedent became incompetent and that JaNell “failed to properly manage” the decedent’s property. They maintain that JaNell “is unable to explain what happened to $10,000,000 of [the decedent’s] money.” The evidence in the record, however, indicates that at the time JaNell began managing the decedent’s property pursuant to a power of attorney, she discovered that the Internal Revenue Service ("IRS”) had placed liens on certain assets, and she began making inquiries to the decedent’s former accounting firm about the decedent’s financial position and assets. JaNell testified that the former accounting firm did not respond to her inquiries, and the record indicates that she hired financial experts to determine the location of, the missing assets or money. JaNell is retired, having been employed for , a number of years by an agency that monitored federal grants.
The children presented no evidence at the brief hearing before the probate court indicating that JaNell mismanaged the decedent’s property before his death; they contend that she might have done so. The arguménts of the parties’ attorneys and comments made by the probate court indicate that, at some point before the decedent’s death, a conservatorship was established and that that conservatorship was administered by both JaNell and David. The probate court stated during the hearing that, during that conservatorship, both of the co-conservators acted appropriately and did nothing outside the purview of the conservatorship, and it noted that “there was never any contest to the settlements or things of that nature.” Accordingly, there exists evidence ih the record indicating that the probate court did not believe that JaNell had mismanaged the decedent’s property under the conservatorship or during the decedent’s life.
*180 As evidence of JaNell’s alleged improvidence, the children also argue that, in seeking to probate the will, JaNell failed to list “significant assets” of the estate. JaNell admitted that there might be assets that she did not list in her initial inventory of the estate filed when she sought to be appointed personal representative; she stated that, at that time, she was unsure in what other assets the estate might have an interest. To the extent that the children contend that JaNell’s omission of any assets indicates a “lack of care,” that issue is one to be resolved by the probate court.
“Improvidence means a lack of care and foresight, of forehandedness, of thrift, of business capacity. It does not mean, however, that the capacity for care, and foresight must needs to be proved by the accumulation of any considerable estate, for men are largely creatures of time and chance. Improvidence in this connection means only that probable lack of care and foresight in the management of the estate’s only asset which, would endanger its safety in case administration should be committed to appel-lee.”
Nichols v. Smith, 186 Ala. 587, 591-92, 65 So. 30, 31 (1914).
The probate court rejected the children’s argument that JaNell could not or would not properly administer the estate. Given the evidence in the record, we cannot say that the children have demonstrated that the probate court erred in failing to disqualify JaNell on the basis of improvidence. See Griffin v. Irwin, 246 Ala. 631, 21 So.2d 668 (1945).
As part of their argument pertaining to the inventory of the estate’s assets, the children also contend that the probate court’s judgment should be reversed because JaNell did not file a “complete inventory” of the estate in seeking to be appointed personal representative. The children cite no authority requiring a person seeking to be appointed personal representative of an estate to file a “complete inventory” at the time one petitions to be appointed personal representative. See Harris v. Owens, 105 So.3d 430, 436 (Ala.2012) (discussing Rule 28, Ala. R.App. P., and an appellant’s duty to demonstrate error on the part of the trial court by supporting his or her arguments with citations to supporting authority). We note that such a requirement would be nonsensical in many situations, because one of the purposes for which a personal representative serves is the determination of the scope of the estate, and often letters of administration are necessary to provide the personal representative authority to effect that determination. In fact, § 43-2-310, Ala.Code 1975, provides that, after a personal representative is appointed, he or she must “collect and take into his possession” the property of the estate in order to make a “full inventory of the same.” Accordingly, we reject the children’s argument that the probate court erred in appointing JaNell personal representative of the estate because she failed to make a full inventory of the estate when she petitioned to be appointed personal representative.
The children next argue that the probate court erred in appointing JaNell as personal representative because, they argue, she might have a conflict of interest with the estate. In their appellate brief, the children contend only that an administrator ad litem should have been appointed to represent the estate instead of JaNell. Although there are several Alabama cases discussing administrators ad litem, the children cite only § 43-2-250, Ala. Code 1975, and a case from another jurisdiction for the proposition that heirs to an estate have the right to the appointment of a personal representative that will impartially represent the estate.
*181 Although the children have failed to address their argument by applying Alabama precedent, out of an abundance of caution, we note that § 43-2-250 provides:
“When, in any proceeding in any court, the estate of a deceased person must be represented, and there is no executor or administrator of such estate, or he is interested adversely thereto, it shall be the duty of the court to appoint an administrator ad litem of such estate for the particular proceeding, without bond, whenever the facts rendering such appointment necessary shall appear in the record of such case or shall be made known to the court by the affidavit of any person interested therein.”
In interpreting the role of an “administrator ad litem,” our supreme court has explained:
“Generally, an administrator ad litem is a fiduciaiy charged with acting in the best interests of the successors to an estate. An administrator [or personal representative] and an administrator ad litem serve in different fiduciary capacities and are separate and distinct parties. The appointment of an administrator ad litem may precede the appointment of an administrator, and the two may subsist together. The administrator ad litem is appointed for a special and limited purpose and is solely responsible to the estate for that portion of its affairs entrusted to him or her by the court.”
Affinity Hosp., L.L.C. v. Williford, 21 So.3d 712, 716 (Ala.2009). See also Golden Gate Nat’l Senior Care, LLC v. Roser, 94 So.3d 365, 370 (Ala.2012) (Bolin, J., concurring specially) (“[T]he need for an administrator ad litem occurs when there is already an existing civil proceeding (‘in any proceeding in any court’) that is in need of someone to substitute for a deceased party, who either has no personal representative or has one who is conflicted.”).
The children contend that they “may” have a claim against JaNell for certain unspecified actions that she took “after the dismissal of the conservatorship.” The children have not alleged any specific wrongdoing on the part of JaNell, and there is no indication that they have filed a legal action against her such that an administrator ad litem would be necessary under § 43-2-250; in fact, the probate court stated that it was unaware of any dispute or claims concerning the conserva-torship. The children also allege that Ja-Nell wants to be the personal representative only so that she can settle in her own favor a pending legal action she and the decedent, and now the estate, have pursued regarding the assets and funds allegedly mishandled or misappropriated by the accounting firm. Mary Elizabeth testified that JaNell had stated that JaNell wanted to settle that legal action and “to pass everything along.” There was evidence before the probate court, however, from which it could have concluded that JaNell was capable of administering the estate properly, that the evidence pertaining to JaNell’s motives were speculation, and that JaNell had properly co-managed the conservatorship. The probate court is not required to assume that a personal representative will breach his or her fiduciary duty to the estate. See § 43-2-840, Ala. Code 1975 (providing that a personal representative has a fiduciary duty to the estate).
The children last argue that the probate court erred in awarding JaNell letters of administration because, they contend, the bond the probate court ordered JaNell to post was insufficient. The.children cite no authority supporting their argument that the determination of an insufficient bond amount warrants the denial *182 of letters of administration to a personal representative, .and, therefore, this court does not address that argument. See Harris v. Owens, supra.
To the extent that the children argue that the bond itself was insufficient, they make no attempt to demonstrate to this court the amount of any alleged insufficiency. Under § 43-2-851, Ala.Code 1975, the probate- court must, unless waived by the terms of the will, require a personal representative to post a bond. That section specifies that ' •
“the bond must be in the amount of the aggregate capital value of the property of the estate in the personal representative’s control, plus one year’s estimated income, and minus the value of securities deposited under arrangements requiring an order of the court for their removal and the value of any land which the fiduciary, pursuant to Section 43-2-844, lacks power to sell or convey without court authorization.”
§ 43-2~851(a).
The probate court approved a bond of $1,390,000. The children argue that that amount is insufficient because it does not account for certain income to the estate from the rental of apartments. They cite portions of the record indicating that JaNell had omitted from her list of the estate assets the ownership of an apartment building and the income that asset generates, and they appear to conclude that that' evidence is sufficient to determine that the amount of the bond posted must be incorrect. The children have made no attempt to- demonstrate through calculations the alleged insufficiency of the bond. -Rather, the children have attempted to leave for this court the job of determining the manner in which the bond was determined and the manner in which it should be determined with the inclusion of the assets allegedly omitted from JaNell’s original inventory list. However, nothing in the record or in the argument asserted by the children demonstrates that the bond was insufficient, even if the valuations regarding the omitted asset were considered. It is not the function of an appellate court to develop and support an argument on behalf of an appellant. Harris v. Owens, 105.So.3d at 436 (“ ‘ “ ‘ “[I]t is not the function of this Court to do a part/s legal research or to make and address legal arguments for a party based on uñdelineated general propositions not supported by sufficient authority or argument.”””” (quoting Van Voorst v. Federal Express Corp., 16 So.3d 86, 93 (Ala.2008), quoting in turn other cases)). Further, even assuming that some error occurred in setting the bond amount, under § 43-2-851(b), the probate court may increase or reduce the bond required at any time. Accordingly, we cannot say that the children have demonstrated error on appeal with regard to this argument.
For the reasons outlined in this opinion, the probate court’s judgment appointing JaNell as personal representative of the estate is affirmed."
AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. The will contained two codicils, and for the purposes of this opinion, the will and the codicils are referred to collectively as "the will.”

. As is explained in later analysis in this opinion, and in notes 3 and 5, infra, we have used the term "personal representative” for ease of reference, but JaNell and David, and, ultimately, Mary Elizabeth, technically sought to be the administrators with the will annexed.

.Mary Elizabeth is seeking to be appointed an administrator with the will annexed. An administrator is subject to the residency requirements of § 43-2-22, Ala.Code 1975, but an executor named in a will is not subject to those residency restrictions. See § 43-2-191, Ala.Code 1975, and Ex parte Adams, 168 So.3d 40, 44 (Ala.2014) (holding that an executor named in a will is not "subject to the *172 nonresident restriction set forth in § 43-2-22”).

. Mary Elizabeth did not testify regarding the capacity in which she has worked for her employers in Georgia. The record indicates that she has Bachelor of Science, Master of Business Administration, Juris Doctor, and Master of Law degrees.

. For the purposes of resolving this appeal, we continue to use the term “personal representative” to refer to the person administering the estate. Technically, a residuary legatee or a principal legatee, or someone appointed under § 43-2-42, would serve as an "administrator with the will annexed.” See § 43-2-27 and Ex parte Baker, 183 So.3d 139, 142 (Ala.2015). Alabama's probate code specifies that "[a]dministrators with the will annexed have the same powers and authority over the estates which executors named in the will would have, and their acts are as effectual for all purposes.” § 43-8-255, Ala.Code 1975. Further, the term "personal representative” is defined as including the terms "executor, administrator, successor personal representative, special administrator, and persons who perform substantially the same function under the law governing their status.” § 43-8-1(24), Ala.Code 1975. Accordingly, we have elected to use the term "personal representative” to refer to one administering the estate in this matter in any capacity.

. We note that David and Clinton have taken a position in support of Mary Elizabeth’s serving as personal representative of the estate, but his court has affirmed the probate court’s determination that Maiy Elizabeth is disqualified from serving because she is not an Alabama resident. David is unable to serve, and Clinton has not sought to serve as the personal representative of the estate,

. JaNell explains her argument on this issue as follows: “Although the Thames children apparently wish to link the payment of the $500,000 to JaNell Thames referenced in the Second Codicil to any and all life insurance proceeds she may have received upon [the decedent’s] death, the Second Codicil specifically states that payment of the $500,000 should be from the value of the IRA account and life-insurance proceeds specifically designated to fund this provision.” The provision of the will at issue states, in part: "I have the obligation [under the terms of an ante-nuptial agreement] to provide a value under this provision of at least Three Hundred Thousand and No/100 DOLLARS ($300,000.00); however it is my intention that said provision should amount to a total of Five Hundred Thousand and No/100 DOLLARS ($500,000.00) and in that regard I may obtain some life insurance for the funding of this provision.”

. For that reason, and because it is not clear whether JaNell might inherit property pursuant to the terms of the will, we also reject the children’s argument that JaNell lacked standing to object to Mary Elizabeth’s request to be appointed personal representative of the estate.

. We recognize that JaNell is not the executor of the estate; the named executor was Regions Bank, which declined to serve. The Alabama Code does not contain a provision stating that an administrator or administrator with the will annexed may be disqualified on the bajsis of improvidence. In 1914, our supreme court addressed an argument that the administrator of the estate of a person who died intestate should be disqualified on the basis of improvidence. Nichols v. Smith, 186 Ala. 587, 65 So. 30 (1914). The Code section applicable at that time, § 2508, Ala.Code 1907, was, in all respects material to this case, virtually identical to the first sentence of § 43-2-22(a), Ala.Code 1975; in other words, that statute provided that no person who was unfit because of improvidence could serve- as an executor. Although,. in Nichols, the su- - .preme court determined that the facts did not indicate that the administrator was improvident, it is unclear whether the supreme court specifically considered the issue of whether the disqualification oh the basis of improvidence applies to an individual seeking appointment as an administrator or an administrator with the will annexed as well as to an individual seeking appointment as an executor. The parties have not presented any argument pertaining to that issue, and, therefore, we do not address it. Out of an abundance of caution, we have elected to assume; for the purposes of resolving this appeal, that disqualification on the basis of improvidence also applies to an individual seeking appointment as an administrator1 or an administrator with the will annexed; therefore, we address the merits of the argument on this, issue,