This is an appeal in a garnishment case.
On September 1, 1960 Elizabeth W. Walker and Richard D. Walker, Jr. were divorced in the Circuit Court of Mobile County by a decree which ordered Walker to pay alimony and child support. Mrs. Walker, on February 12, 1980, filed a petition for a rule nisi in the Mobile County Circuit Court in which she claimed that her former husband was $41,200 in arrears in alimony and child support. The court entered a judgment against Walker in the amount of $43,061, which represented past-due alimony and child support payments and interest thereon. Subsequent to that judgment, Mrs. Walker filed a writ of garnishment against Carolina Mills Lumber Company, Inc., for which her former husband had been employed as a lumber brokerage agent working on a commission basis. The writ was served on Walker on July 18, 1980 and on Carolina Mills Lumber Company on July 21, 1980. Carolina Mills responded to the writ by answering that it was not indebted to Walker and that he owed the company $7,406.09 as of the date of service. Following a hearing at which the evidence was taken ore tenus, the trial court entered an order which found that Carolina Mills was indebted to Walker in the amount of $8,376.09 and that the writ of garnishment should attach to that amount.
The controversy in the instant appeal centers around the attachment of the writ *Page 1067 
of garnishment to Walker's commission account with Carolina Mills Lumber Company and for this reason we shall discuss in some detail the operation of the account and the trial court's conclusions in regard to it. Under his arrangement with Carolina Mills, Walker worked on a commission basis. His account was set up with the company in such a manner that a commission was credited to him when a sale was made. After a sales representative established a history of producing commissions, the company allowed him to make draws against amounts which had been credited to his account even though the balance had not been fully paid by the buyer. However, should any buyer's balance become uncollectible, an amount representing fifty percent of the gross sale, which was the amount of the commission on a sale, would be segregated into a reserve account and charged back against the salesman's commission account. Certain expenses incurred by the salesman and paid by the company were also charged back against the commission account. This charge-back procedure for uncollectible accounts could be made at any time that the company determined that the account was uncollectible and in any event was normally made by the end of the company's accounting year on August 31.
Evidence on the record indicates that the above-described arrangement existed between Walker and Carolina Mills Lumber Company from the time he began working for the company in 1978 until February or March of 1980. At that time he approached company officials about changing his commission account into his present wife's name, stating as his reasons the fact that he had suffered a mild heart attack and a desire to involve her in the business. Walker received payments in his name exclusively until July 28, 1980, at which time the company began to split payments between Walker and his present wife by his request. On July 28, 1980, August 4, 1980, and August 11, 1980, payments were made in dual names. Thereafter, at the end of the company's accounting year on August 31, 1980, payments were made exclusively to the present Mrs. Walker. During a period of eleven or twelve months prior to July 31, 1980, a balance of $23,156.95 was held in Walker's reserve account and represented an unpaid balance from a buyer. The company charged back this figure to Walker's commission account on July 31, 1980, one month before the close of its accounting year on August 31, 1980.
From the facts before it, the trial court found that as of July 21, 1980, the date of the service of the writ of garnishment, Carolina Mills owed Walker $7,365.09 plus commissions earned from July 1, 1980 through July 21, 1980. It also found that this amount — i.e. $7,365.09 plus accrued commissions — was owed to Walker absolutely since no charge-backs from the reserve account had been made as of the date of service of the writ. During July and August of 1980, Walker was found to have received draws totaling $1,134, and the court further concluded that his present wife also received draws from the commission account during that time period. The court also found that commissions in the amount of $7,972.10 were credited to the account at the end of July and that $23,156.95 was deducted because of the unpaid balance from a previous sale which had become uncollectible. Based on these facts, the trial court concluded that the writ of garnishment should attach to $7,365.09, which Carolina Mills owed Walker on July 21, 1980, the date of service. The writ also attached to twenty-five percent of the amounts paid by the company to Walker after that date, which figure totaled $284. In regard to the charge-back of $23,156.95 from the reserve account, the court concluded that the debt was contingent until the offset was actually made on July 31, 1980. Finally, the trial court found that Mrs. Walker failed to prove fraud in connection with the transfer of the commission account to Walker's present wife and that any sums paid out under this arrangement were not subject to the writ of garnishment. However, after issuing its findings of fact and conclusions of law, the trial court, acting on a motion from Mrs. Walker, altered its findings to read that the transfer of the account into the present Mrs. *Page 1068 
Walker's name was motivated by a fraudulent intent on the part of Walker but failed to find that Carolina Mills had acted collusively. The court left standing its conclusion of law which prevented the writ from attaching to sums paid to the present Mrs. Walker under the new arrangement. Mrs. Walker has appealed to this court from the trial court's judgment, and Carolina Mills has cross-appealed.
The first issue raised by Mrs. Walker for our consideration concerns the transfer of the account with Carolina Mills Lumber Company from Walker's name into the name of his present wife. Mrs. Walker claims that this transfer was fraudulent and that the writ of garnishment should attach to twenty-five percent of all sums paid under it until her judgment for arrearages in alimony and child support is satisfied. She stresses that the assignment was made after the service of the writ of garnishment and that this fact shows that the transaction was infected with fraud. Carolina Mills, on the other hand, argues that the assignment of the commission account to the present Mrs. Walker was made in the normal course of business and for business reasons. The company indicates that Walker had discussed the possibilities of such a transfer as early as February or March of 1980 before the writ was served and that the transfer process was not completed until near the end of its accounting year on August 31 for reasons of convenience. The company further contends that it was not acting fraudulently in connection with the transfer but was merely complying with Walker's request that he be relieved of some responsibility for health reasons and so that his present wife could become more involved in the business. It is the company's position that any sums paid to the present Mrs. Walker are shielded from the writ of garnishment.
The garnishment process provides a method through which a creditor can recover amounts owed by a third person to the debtor. Under Alabama law the garnisheeing creditor assumes those rights which could be asserted by the debtor against a third person in an action for debt or assumpsit on the date of the service of the writ. Jefferson County Savings Bank v.Nathan, 138 Ala. 342, 35 So. 355 (1903). The date of service of the writ, then, becomes the date on which priority among the various claimants is determined. See Bloch Brothers v.Liverpool London Globe Insurance Co., 208 Ala. 523,94 So. 562 (1922); Lady Ensley Furnace Co. v. Rogan, 95 Ala. 594,11 So. 188 (1892). An exception is made to this rule of priority, however, when there has been a fraudulent or collusive assignment prior to the service of the writ. Under such a situation the writ will attach to the amounts assigned in favor of the garnisheeing creditor. American Trust Savings Bank v.O'Barr, 12 Ala. App. 546, 67 So. 794 (Ala.Ct.App. 1914).
Mrs. Walker urges us to find that the assignment of her former husband's commission account to his present wife was fraudulent and thus hold that twenty-five percent of any amounts paid to the present Mrs. Walker are to be subjected to the writ. She bases this position on a line of authority in Alabama case law which holds that proof of fraudulent action on the part of the debtor is sufficient to lead to a finding that an assignment should be set aside. See Bloch Brothers v.Liverpool London Globe Insurance Co. She places great emphasis on the fact that the assignment was not made until after the writ had actually been served and states that this shows a fraudulent intent on the part of her former husband and Carolina Mills. Nicrosi v. Irvine, 102 Ala. 648, 15 So. 429
(1894). Carolina Mills argues that the assignment was made in good faith and on the basis of a reasonable business request from Walker to be relieved of responsibilities. The company argues that it has not acted collusively in the assignment of the account and that it is not responsible for amounts subsequently paid to the present Mrs. Walker. The company contends that despite the fact that there has been a finding of fraudulent intent on the part of Walker, it was not a party to that fraud and thus is free from having to answer for sums paid to the assignee. Carolina Mills also urges us to uphold *Page 1069 
this aspect of the trial court's conclusion on the basis of the ore tenus rule which demands that a trial court's conclusions concerning fraud in a garnishment case must be viewed in the most favorable light possible and must not be reversed unless there is gross abuse of discretion or palpable error. Robertsv. Peoples Bank Trust Co., 410 So.2d 393 (Ala. 1982).
In dealing with this issue the trial court originally found that Mrs. Walker had failed to prove fraud and collusion in connection with the assignment of the commission account to the present Mrs. Walker and concluded that amounts paid to Walker's present wife were not subject to the writ. Subsequently, the court amended its finding to state that the assignment was motivated by a fraudulent intent on the part of the debtor but left standing that portion of the order which shielded sums paid to the present Mrs. Walker. We agree with Mrs. Walker that the trial court's conclusion in regard to this portion of the order is erroneous and is due to be reversed. In so deciding we necessarily reject Carolina Mills' argument that there must be a showing of both fraud on the part of the debtor and collusion on the part of the garnishee before the writ will attach to sums paid under an assignment. The proper rule of law obtaining where there has been an assignment holds that proof of fraud on the part of the debtor alone or proof of fraud and collusion on the part of both the debtor and the garnishee together will be sufficient to set aside a transfer. This rule has been stated by the supreme court in its decision of Nicrosi v. Irvine,supra, where it said:
 "It is thoroughly well established law that in the absence of fraud on the part of the debtor, or
fraudulent collusion between him and the garnishee, only such money demands can be subjected by process of garnishment to the satisfaction of the plaintiff's judgment as the defendant in judgment could, in his own name and right, recover in an action of debt or indebitatus assumpsit." (Citations omitted. Emphasis supplied.)
The use of the disjunctive in Nicrosi v. Irvine, supra, forecloses Carolina Mills' argument that collusion between the garnishee and the debtor must be shown in addition to fraud on the part of the defendant before an assignment can be set aside.
The trial court, in its findings of fact, indicated that the assignment was made through a fraudulent intent on the part of Walker. Evidence on the record shows that Walker intended, through the assignment, to hinder his former wife's collection efforts, and this fact supports a finding of fraud on his part. This finding by the trial court should have been sufficient to lead to a conclusion that the assignment of the account should be set aside and any sums paid out under it should fall under the writ. See Nicrosi v. Irvine, supra. However, the trial court concluded that sums paid to the present Mrs. Walker were not included in the garnishment. This conclusion, then, was erroneous and must be reversed.
Mrs. Walker next argues that the trial court erred in concluding that the company properly made a charge-back of $23,156.95 from Walker's reserve account on July 31, 1980. She claims that as of the date of service of the writ, this amount which represented an unpaid balance from a buyer was contingent and thus could not be used to offset commissions earned by Walker. Carolina Mills, on the other hand, contends in its cross-appeal that this debt from the reserve account had fully matured and that by its agreement with Walker the company could have made the charge-back at any time. The company argues in its cross-appeal that as of the date of service of the writ, Walker was a net debtor to the company because of the amount held in the reserve account.
In advancing these positions both parties rely on the general rule that a creditor may recover amounts from the garnishee which the debtor could have recovered in an action for debt or assumpsit. Nicrosi v. Irvine, supra. The trial court concluded that the debt in the reserve account had not matured as of July 21, 1980 and that it could *Page 1070 
not be used as an offset on that date. However, the court then found that the charge-back was properly made by the company on July 31, 1980. In First National Bank v. Minge, 186 Ala. 405,64 So. 957 (1914) (hereinafter referred to as Minge I), the supreme court was faced with a situation in which an oil mill's bank account was garnisheed under circumstances factually similar to the case at bar. The bank held notes from the oil mill and attempted to set them off against the deposit in question. There, the setoff was refused because the notes had not matured at the date of the service of the writ of garnishment. In its later decision of Minge v. First NationalBank, 191 Ala. 271, 68 So. 141 (1915) (hereinafter referred to as Minge II), the supreme court allowed a setoff of the notes against the deposit since the oil mill had become insolvent since the decision of Minge I. Here, the trial court was acting in a manner consistent with Minge I and Minge II in accord with the evidence before it. Its refusal to allow the charge-back to be made on July 21, 1980 was correct under Minge I since the evidence showed that the company had not determined that the account was uncollectible at that date. Similarly, allowing the offset to be made on July 31, 1980 was also correct under the equitable considerations of Minge II. It was at this date that Carolina Mills actually determined that the buyer's balance would not be paid, and it was at this date that Walker became a net debtor to his employer. These facts, then, gave the trial court equitable grounds, similar to those in Minge II, to find that the setoff was properly made on July 31, 1980, and its decision in this respect must be upheld.
Finally, Mrs. Walker contends that the garnishment should have attached to any salary advances made by Carolina Mills to either Walker or his present wife. It is her position that the continuation of advance payments after the date that the debt in the reserve account matured and was offset against the commission account shows a disregard on the part of both Walker and the company to see that the debt was paid back. Carolina Mills argues that any advance payments made to Walker were in reality loans and that, as such, they are not subject to the garnishment process since they were made under an express agreement which contemplated repayment. The trial court found, and we agree, that amounts paid to Walker under an agreement to make advances will not fall under the writ. In so deciding, it was faced with a situation factually similar to Packard MotorsCo. v. Tally, 212 Ala. 487, 103 So. 455 (Ala. 1925), in which it was held that advances made by agreement are not subject to the garnishment process. There, the court said:
 "The principles laid down in our decisions establish the following rules: An employer, in the conduct of his own business, may stipulate by contract to pay wages in advance, that is, before the close of the earning period for which the advance is made, and may carry out such contract after service of garnishment without subjecting himself to double payment. This is but a recognition of his right of contract in the management of his own business. A drawing account is a well-recognized modern business method of furnishing the employee with means of maintenance while engaged in the service from which wages, or commissions are to accrue."
We find that advance payments here were not made in disregard of the debt created by the setoff. Rather, they were advances made under an agreement as part of the company's standard business practice and, as such, were properly excluded from the garnishment process.
Because of our conclusion above that the assignment of the commission account to the present Mrs. Walker was fraudulent, discussion of advances made to her is unnecessary.
That aspect of the judgment holding that the fraud on the part of Walker did not nullify the assignment to his wife is reversed and the cause is remanded for entry of judgment implementing this decision. The other aspects of the judgment are affirmed. *Page 1071 
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.