842 So.2d 703 (2002)
DEVAN LOWE, INC.
v.
Michael E. STEPHENS.
Michael E. Stephens
v.
Devan Lowe, Inc.
2001088.
Court of Civil Appeals of Alabama.
June 14, 2002.
Certiorari Petitions Denied August 16, 2002.
*704 E. Allen Dodd, Jr., and J. David Dodd of Scruggs, Dodd, Dodd & Bazemore, Fort Payne, for appellant/cross-appellee Devan Lowe, Inc.
G. Thomas Sullivan of Vincent, Hasty, Sullivan & Elliott, P.C., Birmingham, for appellee/cross-appellant Michael E. Stephens.
Alabama Supreme Court 1011770 and 1011817.

On Application for Rehearing
CRAWLEY, Judge.
The opinion of this court issued on April 26, 2002, is withdrawn, and the following is substituted therefor.
*705 This is an appeal and a cross-appeal from a judgment in a garnishment. On November 3, 1999, Michael E. Stephens sued Carl Hubbard on a promissory note the parties had executed in 1994, seeking recovery of principal and interest in the amount of $323,633.11. On April 8, 2000, Stephens ultimately obtained a default judgment against Hubbard and at a separate hearing, conducted on June 16, 2000, proved damages in the amount of $336,339.94.
On August 11, 2000, Stephens filed a writ of garnishment against Devan Lowe Pontiac-Cadillac-GMC (Devan Lowe, Inc.) (hereinafter referred to as "Lowe"), an automobile dealership, seeking to garnish commissions Lowe owed Hubbard as a result of his employment at Lowe's. Lowe filed an answer to the garnishment on September 7, 2000, stating that it was not indebted to Hubbard and that Hubbard was not in its employ. Thereafter on September 22, 2000, Stephens filed an answer contesting the veracity of the garnishee's answer pursuant to § 6-6-458, Ala.Code 1975, and supported that pleading with an affidavit of one of Lowe's staff members who confirmed that Hubbard continued to work at Lowe.
The matter was set for trial on January 12, 2001. The hearing proceeded as scheduled, and the testimony of only one witness was presentedBarbara Burks. Burks had served as Lowe's office manager for the past 30 years. She testified that Hubbard had sold cars over the Internet on a commission basis for Lowe since 1998. Burks also testified that Hubbard had arranged for his commissions to be paid at the rate of $150 per one-week pay period and had arranged for his wife[1] to receive the remainder of his pay (usually over $2,000). In addition, the couple received health-care benefits, the use of a demonstrator vehicle, and the use of a cellular phone. Burks testified that she understood that Devan Lowe, the owner of Lowe, became uncomfortable with this arrangement because he learned from Hubbard that he had devised the compensation plan so that it would not interfere with Hubbard's disability benefits. Burks testified that her boss told her that he did not want to be involved in any type of "welfare fraud." Burks testified that for this reason Hubbard was encouraged to devise another arrangement, and he created the Dolphin Developers, L.L.C.
Burks testified that she did not know if Dolphin Developers had a business license, or if it was registered to do business in the state of Alabama. Burks also testified that she did not know who the officers of the company were or who the owners were. She testified that, as office manager, she simply complied with a personal request made by Carl Hubbard and his wife Katrina Hubbard, that any check addressed to either of them be made out to Dolphin Developers, L.L.C., instead. Burks testified that there was no written agreement or contract between Lowe and Hubbard or Dolphin Developers reflecting the payment terms.
Burks testified that Katrina Hubbard gave her a letter with the new payment instructions for their future commissions on August 12, 2000. Burks testified that as of September 1, 2000, the Hubbards were dropped from Lowe's group health insurance plan, and from August 12 until December 31, Burks reported their income by means of a 1099 statement. Burks maintained in her testimony that after August 12, 2000, the Hubbards were no longer employees of Lowe. The first check made out to Dolphin Developers, L.L.C., is contained in the record and is dated August *706 24, 2000. Burks testified that Lowe was not served notice of the garnishment action until August 30, 2000. However, Burks admitted that Carl Hubbard performed the same services for Lowe he had performed in the past; he was simply compensated for those services through a different entityDolphin Developers, L.L.C. Burks testified that she was not invoiced for the services; the compensation was paid on commission, exactly as it had been paid in the past. Burks also testified that Hubbard continued to have the use of a demonstrator vehicle and a cellular phoneprivileges customarily reserved for Lowe's employees.
The trial court entered a judgment in favor of Stephens in the amount of $24,350 or the amount Lowe had paid Dolphin Developers, L.L.C., on behalf of Carl Hubbard after it was served with the garnishment on August 30, 2000. Lowe appeals from the judgment, claiming that the evidence was insufficient to support the trial court's finding that Hubbard was employed by Lowe. Stephens cross-appeals, claiming that the trial court erred in failing to award the entire amount of the default judgment entered against Hubbard against Lowe as the garnishee.
Lowe contends that the ore tenus presumption does not apply in a case such as this, in which only one person testified. We disagree. It is not necessary that there be a dispute or absolute contradiction in the testimony in order to invoke the ore tenus presumption. That presumption is grounded on the trial court's superior position to evaluate the witnesses' demeanor and credibility and assess the weight of their testimony. Architectura, Inc. v. Miller, 769 So.2d 330 (Ala.Civ.App.2000). Recent cases in which trial courts have denied waivers of parental consent to minors seeking abortions have employed the ore tenus presumption, even though the minor seeking the waiver was the sole witness to testify at the hearing. Ex parte Anonymous, 810 So.2d 786 (Ala.2001); Ex parte Anonymous, 806 So.2d 1269 (Ala.2001); Ex parte Anonymous, 803 So.2d 542 (Ala.2001).
Hubbard was not performing body work, or cleaning cars, selling tires, or performing mechanical services for Lowe. These services would lend themselves far more easily to an independent-contractor payment arrangement. Hubbard was selling automobiles over the Internet on a commission basis. Lowe is an automobile dealership. Selling automobiles is the essence of Lowe's business. Lowe has no independent contractors who sell cars for it on a commission basis. The evidence reflects that nothing significant changed about Hubbard's employment between August, when he was employed by Lowe, and September, when Lowe was paying Hubbard's commission to Dolphin Developers, L.L.C. Hubbard was receiving the same salary, he was receiving the same benefits through COBRA[2] that he received when he was being paid by Lowe, and Hubbard still had the use of a demonstrator vehicle and a cellular phone. In reviewing the judgment of a trial court based on ore tenus evidence, a presumption of correctness attaches to the court's conclusion on factual issues, and its factual determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Marvin's Inc. v. Robertson, 608 So.2d 391 (Ala.1992). Before entering its judgment, the trial court stated in open court:

*707 "You don't have any kind of contract at all? Okay. I'm simply not going to let you just, at their request, make a check payable to somebody else. If you get a contract, we'll have another argument about it later.... Starting with the September 6th [payment], that would make it at $24,350 that has been paid to Dolphin [Developers] but it's a direct result of the work, apparently, offrom the evidence I haveof Carl Hubbard. And you're entitled to [a] judgment for that amount."
In light of the presumption accorded the trial court's factual determination, there is evidence to support the trial court's conclusion that Lowe, and not Dolphin Developers, L.L.C., was Hubbard's employer.
Lowe also contends on appeal that the evidence does not support the trial court's finding that Dolphin Developers, L.L.C., was a "mere sham or subterfuge." The trial court heard Burks testify that Hubbard had admittedly devised a compensation plan shifting the bulk of his income to his wife to defraud the federal government so that he could continue to receive his full disability benefits. Further, Hubbard was served with Stephens's suit on the promissory note on January 26, 2000.[3] Sometime after April 28, 2000, Hubbard was served with the default judgment on that note. The record clearly indicates that Hubbard's employer, Lowe, was not served with garnishment proceedings until August 30, 2000. Plaintiff's exhibit one reflects that on February 21, 2000, in the state of Georgia, Hubbard formed Dolphin Developers, L.L.C., in Fulton County, Georgia. Even though garnishment proceedings had not yet been instituted, it can easily be inferred from the evidence that the impetus for the formation of the L.L.C. was to evade Michael Stephens as a creditor. In sum, this purpose was fraudulent and illegal.
A garnishment is a statutory remedy; it is not, however, "like summary statutory proceedings, in derogation of the course of the common law, subjected to a strict construction." White v. Simpson, 107 Ala. 386, 393, 18 So. 151, 152 (1895). Instead it is a "species of attachment, and falls within the influence of the statutory injunction, that `the attachment law must be liberally construed to advance the manifest intent of the law.'" Id. (quoting § 2998, Ala.Code 1886). Our early statutes authorizing attachments of property were designed to circumvent fraud and were liberally construed in furtherance of that objective. Ware v. Seasongood, 92 Ala. 152, 9 So. 138 (1891).
In Walker v. Carolina Mills Lumber Co., 429 So.2d 1065 (Ala.Civ.App.1983), this court determined that either the garnishee or the debtor must have fraudulently transferred the funds to escape garnishment but held that it was unnecessary to find that both had participated in the fraud to make a finding of a fraudulent transfer to avoid creditors. In this case there was clearly evidence that Hubbard knew of Stephens's sizable default judgment against him; he realized he had insufficient assets with which to satisfy this judgment; and he likely kept track of the garnishment proceedings in order to have so accurately timed his departure from Lowe and enacted his new payment plan. There is ample evidence to support the trial court's finding that Hubbard was actually employed by Lowe although he had his commissions made payable to Dolphin Developers.
*708 We turn now to the cross-appeal, in which Stephens claims that, pursuant to § 6-6-460, he is entitled to a judgment against Lowe for the entire amount of his $323,633.11 default judgment against Hubbard. The trial court entered a judgment against Lowe for $24,350, or the amount in commissions it had paid Dolphin Developers, L.L.C., since the date it had been served with the writ of garnishment. We are not persuaded by Stephens's argument.
Under Alabama garnishment law, the money sought "must be due absolutely and without contingency." Escambia Chem. Corp. v. United Ins. Co. of America, 396 So.2d 66, 68 (Ala.1981). Further, property which does not presently belong to the defendant may not be garnished. Druid City Hosp. Bd. v. Epperson, 378 So.2d 696 (Ala.1979). "`It is a universal rule that the garnishee is to be placed in no worse condition by operation of the proceedings against him than he would be if the defendant's claim against him were enforced by the defendant himself.'" Jim Davis & Co. v. Albuquerque Fed. Sav. & Loan Ass'n, 536 So.2d 55, 57 (Ala.1988) (quoting Pettus v. Dudley Bar Co., 218 Ala. 163, 164, 118 So. 153, 154 (1928)).
Stephens bases his cross-appeal on the wording of the statute § 6-6-460, which addresses the procedural occurrences after judgment is rendered in favor of the plaintiff following a contest of liability after receipt of notice of garnishment. This section states in part: "If such issue is found against the garnishee, judgment must be entered against him in favor of the plaintiff, if necessary, to satisfy his claim or judgment against the defendant ...." Stephens claims that the wording of § 6-6-460 means that because Lowe contested the garnishment and lost, Lowe is now liable, not only for the amount to which it is indebted to Hubbard, butas a sanction for the entire amount of the judgment.
The following quotation represents a common and consistent objective and concept which currently runs through our garnishment caselaw and can be traced back as far as the late 1800's:
"Garnishment proceedings were provided by statute to enable a creditor to reach property and funds of his unwilling debtor which cannot be reached by execution, but which, in equity and justice, should be applied to the payment of the debtor's debts. They were not intended to enable the creditor to subject properties or funds which in truth do not belong to the debtor, and which should not, as a matter of equity, be applied to the payment of his debts."
Allen v. Woodruff, 2 Ala.App. 415, 420, 56 So. 247, 249 (1911). We conclude that the trial court correctly limited the amount of the judgment to the amount in which Lowe was indebted to Hubbard. The judgment is affirmed in its entirety.
OPINION OF APRIL 26, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
PITTMAN and MURDOCK, JJ., concur.
YATES, P.J., and THOMPSON, J., concur in the result.
YATES, Presiding Judge, concurring in the result.
I believe that the trial court was correct in concluding that Devan Lowe, Inc., was the employer of debtor, Carl Hubbard, and that, therefore, Lowe owed Hubbard $24,350 in wages that were subject to garnishment by Michael Stephens. The basis of a garnishment is not that the garnishee (Lowe) owes any money to the creditor *709 (Stephens); instead, the debtor (Hubbard) owes the money, and the garnishee is required to pay it only if the garnishee is found to owe money to the debtor.
NOTES
[1] It is undisputed that Hubbard's wife made a fraction of the sales that he completed.
[2] The record indicates that although the company had carried family coverage on the Hubbards before August 12, 2000, the Hubbards had paid for that coverage.
[3] The record indicates that Hubbard had already liquidated most of his properties to settle a suit on a promissory note of equal value to another lender.