Rel: August 23, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

### SC-2023-0683

_____

**Radiance Capital Receivables Twelve, LLC**

**v.**

**Bondy's Ford, Inc.**

**Appeal from Henry Circuit Court**
**(CV-17-1)**

BRYAN, Justice.

Radiance Capital Receivables Twelve, LLC ("Radiance"), appeals from a judgment entered by the Henry Circuit Court ("the trial court") in favor of Bondy's Ford, Inc. ("Bondy's"). Radiance had garnished the

wages of David Sherrill, who had worked for Bondy's. Bondy's stopped paying on the garnishment, claiming that Sherrill had left its employment. Bondy's, however, continued to pay funds for Sherrill's ongoing services to a company created by Sherrill's wife. Radiance claimed that Bondy's was still required to comply with the garnishment by withdrawing the funds owed for Sherrill's ongoing services. As explained below, Radiance and Bondy's each presented evidence in support of what we conclude were cross-motions for a summary judgment. The trial court entered a judgment granting Bondy's motion. Radiance appealed. Because genuine issues of material fact exist, we reverse the judgment and remand this case for further proceedings.

<u>Procedural History</u>

On January 23, 2017, SE Property Holdings, LLC, filed a "Notice of Filing of Foreign Judgment" in the trial court. SE Property Holdings had obtained a judgment from a Florida court against Sherrill. At the time of the filing of the notice, Sherrill owed approximately $265,780 under the foreign judgment. SE Property Holdings thereafter sought garnishment from various entities as part of its efforts to collect the debt.

2

On July 16, 2018, SE Property Holdings obtained process of garnishment, issued to Bondy's as a garnishee. See § 6-6-393, Ala. Code 1975. In its answer, Bondy's averred that Sherrill was its employee, that it would withhold funds from his compensation, and that it would pay those funds to the circuit clerk as required. See § 6-6-450, Ala. Code 1975. In August 2018, Sherrill moved to stop the wage garnishment. SE Property Holdings objected, arguing that Sherrill was not a resident of Alabama and thus was not entitled to withholding exemptions under Alabama law. The trial court denied Sherrill's "objection to garnishment."

In January 2019, Radiance was substituted for SE Property Holdings as the plaintiff, according to the terms of a sale and transfer of SE Property Holdings' rights under the original foreign judgment. Upon a motion filed by Radiance, the trial court entered a judgment on January 23, 2019, stating: "The Motion of Radiance … to condemn and disburse any and all funds received from … Bondy's ... is hereby GRANTED. The Clerk of the Court is ORDERED to condemn and disburse all funds received from said Garnishee, and any future funds received, to the Plaintiff …." (Capitalization in original.) See § 6-6-454, Ala. Code 1975

3

("If the garnishee answers and admits indebtedness to the defendant, judgment thereon must be entered against him, after judgment against the defendant, for the amount so admitted, if less than the amount of the judgment against the defendant, or, if more or equal thereto, for the amount thereof; and if the debtor demand is not then payable, execution must be suspended until its maturity.").

In September 2019, an August 29, 2019, letter written on Bondy's letterhead was filed with the circuit clerk, stating that Sherrill had left Bondy's employment on June 24, 2019. The letter provided no indication that it was sent to Radiance. The circuit clerk marked the letter "received" on September 6, 2019. Bondy's did not make any further payments on the garnishment.

On October 26, 2022, Radiance filed a "Motion for Judgment Against Garnishee," i.e., Bondy's. In its motion, Radiance characterized Bondy's August 29, 2019, letter as "an unsworn amended answer." Radiance submitted evidence in support of its motion, arguing that Sherrill had continued providing services to Bondy's and had merely diverted his pay to a company owned by his wife. Based largely on the Court of Civil Appeals' decision in Devan Lowe, Inc. v. Stephens, 842 So.

4

2d 703 (Ala. Civ. App. 2002), Radiance asked the trial court to find that the company was a "sham" and to enforce the garnishment against Bondy's for funds it had paid, and was continuing to pay, for Sherrill's services.

The trial court allowed the parties time to conduct discovery. In July 2023, Bondy's filed a "Response and/or Motion to Dismiss Radiance Capital's Motion for Judgment Against Garnishee." Bondy's also submitted evidence in support of its motion. Based on Devan Lowe, Bondy's argued that, because Sherrill did not perform functions that were the "essence" of Bondy's business, he had always been more like an independent contractor. Thus, according to Bondy's, any funds it paid for Sherrill's continued provision of services to Bondy's were not subject to garnishment. Radiance thereafter submitted additional evidence in response to Bondy's filings.

On August 7, 2023, the trial court entered its judgment, stating:

> "Before the Court is [Radiance]'s Motion for Judgment Against Garnishee, Bondy's …[,] and Bondy's Response and/or Motion to Dismiss Radiance['s] Motion for Judgment Against Garnishee.
>
> "A hearing was held on July 18, 2023. Radiance['s] Motion for Judgment is denied. Bondy's Motion to Dismiss is granted. Bondy's … is dismissed."

5

Radiance appeals.

<u>Standard of Review</u>

Before considering the pertinent evidence produced by the parties and the merits of Radiance's arguments on appeal, we must first ascertain the appropriate standard of review. As noted above, the trial court entered a garnishment judgment pursuant to § 6-6-454 on January 23, 2019. In September 2019, Bondy's asserted to the trial court via a letter that Sherrill had left Bondy's employment on June 24, 2019. In its responsive "Motion for Judgment Against Garnishee," Radiance characterized Bondy's August 29, 2019, letter as "an unsworn amended answer."

Title 6, Chapter 10, Article 1, of the Alabama Code provides for exemption from levy and sale under process. Section 6-10-7(a), Ala. Code 1975, provides, in relevant part:

> "Should the employment of the defendant for any reason be terminated with the garnishee, then the garnishee shall not later than 15 days after the termination of employment, report the termination to the court and pay into court all sums withheld from the defendant's wages, salaries, or other compensation. If the plaintiff in garnishment contests the answer of the garnishee, as now provided by law in such cases, and proves to the court the deficiency or untruth of the garnishee's answer, the court shall enter judgment against the garnishee for such amount as would have been subject to

the order of condemnation had the sum not been released to the defendant."

Thus, § 6-10-7(a) directs that a garnishee's report to the trial court of the termination of the defendant's employment be treated as an answer that may be contested by the plaintiff, in accordance with the procedure for garnishment actions. Consistent with the provisions of § 6-10-7(a), Radiance treated Bondy's August 29, 2019, letter as "an unsworn amended answer" and contested Bondy's assertions set forth in the letter.[1] Because Radiance included supporting evidentiary materials with its responsive "Motion for Judgment Against Garnishee," we conclude that that motion was in the nature of a summary-judgment motion. See Sexton v. Liberty Nat'l Life Ins. Co., 405 So. 2d 18, 20 (Ala. 1981)("Summary judgment is appropriate if after the court considers the pleadings, depositions, answers to interrogatories, admissions, and affidavits, there is no genuine issue as to any material fact."). Likewise, because Bondy's "Response and/or Motion to Dismiss Radiance Capital's Motion for Judgment Against Garnishee" included supporting

---

[1]Neither Radiance nor Bondy's argues that the other did not adequately comply with the pertinent statutory provisions governing garnishment actions.

evidentiary material, we conclude that that motion was also in the nature of a summary-judgment motion.

Therefore, the procedural posture upon which the trial court entered its August 7, 2023, judgment was the parties' submissions of cross-motions for a summary judgment regarding the issue whether funds held by Bondy's are subject to garnishment to satisfy the foreign judgment against Sherrill. See, e.g., North River Ins. Co. v. Overton, 59 So. 3d 1, 4 (Ala. 2010).

> "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004)."

Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038 (Ala. 2004).

> "On motion for summary judgment the burden is upon the movant to show that no genuine triable issue of material fact exists. Board of Sewer and Water Commissioners of the City of Mobile v. Alabama Power Co., Ala., 363 So. 2d 304 (1978). In the instant case this maxim's applicability is complicated because both parties moved for summary judgment .... However, we hold that where such cross-motions for summary judgment occur the burden remains on each movant to establish the propriety of the court entering summary judgment on its own motion. See 10 Wright &

8

Miller, Federal Practice and Procedure: Civil § 2727 (1973). The fact that the first party fails to carry the burden on his motion does not necessarily mean that the other party has carried the burden under his own motion and should be granted summary judgment. See Rains v. Cascade Industries, Inc., 402 F.2d 241 (3rd Cir. 1968); Walling v. Richmond Screw Anchor Co., 154 F.2d 780 (2d Cir. 1946)[,] cert. denied, 328 U.S. 870, 66 S. Ct. 1383, 90 L. Ed. 1640 (1946); 10 Wright & Miller, supra § 2720 (1973)."

Amason v. First State Bank of Lineville, 369 So. 2d 547, 552 (Ala. 1979).

### Summary-Judgment Evidence

Before turning to Radiance's substantive arguments on appeal, we will summarize the evidence produced in support of the parties' respective cross-motions for a summary judgment. However, as an initial matter, we address Bondy's argument -- asserted for the first time on appeal -- that the evidence submitted by Radiance in support of its summary-judgment motion was not properly authenticated. Radiance correctly responds that Bondy's has waived that argument because Bondy's did not object to the admissibility of Radiance's evidence in the trial court and did not move to strike the evidence on the ground that it was not authenticated. See Chatham v. CSX Transp., Inc., 613 So. 2d 341, 344 (Ala. 1993)("A party must move the trial court to strike any nonadmissible evidence that violates Rule 56(e)[, Ala. R. Civ. P.] Failure

9

to do so waives any objection on appeal and allows this Court to consider the defective evidence.  Perry [v. Mobile Cnty., 533 So. 2d 602,] 604-05 [(Ala. 1988)].").  Because Bondy's did not raise any objection in the trial court to the evidence submitted by Radiance or move to strike that evidence, that evidence was properly before the trial court and may be considered by this Court in analyzing whether summary judgment was proper.  The evidence produced in the trial court showed the following.

Sherrill works as a private pilot.  Bondy's operates an automobile dealership in southeast Alabama.  According to the affidavit of Bondy's comptroller, Bondy's "is not a commercial airline and does not offer airplane rental to the general public."  Regarding Sherrill, the comptroller's affidavit stated: "In 2014, David Sherrill became employed with Bondy's to provide an estimated 100 hours of piloting services.  The anticipated hours were established by prior yearly flight history.  Bondy's offered Sherrill an employment position so he could participate in the [c]ompany health insurance and retirement benefits."  Sherrill's starting gross pay was $72,000 per year.  An April 2018 note in Sherrill's employment file states that his pay was increased to $73,000 per year, or $1,403.85 per week.

10

Bondy's is owned by individuals identified in the record simply as "the Marshall family." According to Sherrill's affidavit, he performed work primarily for the Marshall family and not for Bondy's. He was paid through Bondy's only to allow him to receive retirement and health-insurance benefits from that entity. He stated that, in 2014,

> "the Marshall family was looking for a part-time pilot for their aircraft. Based on usage during the previous years, we estimated the Marshall family flew approximately 100 hours per year. … The Marshall[]s offered to pay me through their car dealership, Bondy's, so I could participate in the company's retirement and health insurance plans. … The vast majority of the time I spent as a pilot under this arrangement was for the Marshall family individually and not for Bondy's."

This work arrangement was such that Sherrill did not keep regular business hours or perform work at any of Bondy's offices. He was never employed as a car salesman for Bondy's.

Notably, Sherrill affirmed that he was "allowed to fly for other people and businesses if it did not conflict with the Marshall[s'] flight plans." Indeed, Sherrill stated in his affidavit that he has flown more for other individuals and businesses "than the 100 hours I contract for with the Marshalls." He estimated that, in 2019, his "work with Bondy's only comprised about 1/4 of [his] annual flight time."

11

In 2012, before Sherrill made his arrangement with Bondy's, Radiance's predecessor, SE Property Holdings, had obtained a judgment from a Florida court on a mortgage foreclosure against Sherrill and his then-wife, Michele. The original judgment of $907,249.31 had been reduced to $265,780.68; it bore interest at 4.75% per annum. The foreign judgment was properly filed in the trial court on January 23, 2017.

On July 16, 2018, SE Property Holdings filed in the trial court process of garnishment against Bondy's. At the time, Sherrill's debt totaled $339,760.02, including interest and costs. The writ-of-garnishment section of the process of garnishment advised Bondy's that it must report a termination of Sherrill's employment to the trial court within 15 days of the termination. Bondy's responded by filing a form answer on July 25, 2018, selecting the option stating: "The defendant is employed, and the garnishee will withhold from the salary, wages, or other compensation of the defendant, as required, and pay the amounts withheld to the Clerk of the above-named Court."

In his August 2018 motions to stop the garnishment, Sherrill represented that he was employed by Bondy's and that his take-home pay after withholding funds for taxes and child support was approximately

12

$351 per week, or only $18,252 per year. He did not identify any other employer or any other sources of income, despite the fact that -- according to his later affidavit -- the majority of his work was performed for other businesses and individuals.

Sherrill's 2018 filings also contain discrepancies regarding his place of residence. In those filings, he listed an address in Panama City Beach, Florida, a post-office box in Headland, Alabama, and averred: "I live in Henry County, Alabama." On employment forms that Sherrill had signed in 2014, he listed an address in Headland. SE Property Holdings, however, showed that, despite Sherrill's sworn 2018 statement that he lived in Alabama, he had already received homestead and other exemptions based on a residence in Florida. In December 2018, Sherrill, appearing pro se at the time, wrote a handwritten letter to the trial court asking for a continuance of a hearing. In that letter, he admitted: "I 'do' live in Florida, Panama City Beach, and is my perm. residence, but am employed by Bondy's here in Dothan, AL. My work responsibilities only require me to be up here a couple times a month[. M]y kids do[,] however, live in Headland, AL!" Nonetheless, in his June 2023 affidavit, Sherrill averred that he had "mov[ed] to the area in 2014."

13

Between July 30, 2018, and July 1, 2019, Bondy's paid a total of $2,267.94 on the garnishment. It stopped payments after July 1, 2019. On July 1, 2019, Sherrill's present wife, Kelly, a nurse, formed a company known as KDS Aero Services, LLC. She was the sole initial member. Sherrill's June 2023 affidavit stated: "My wife formed KDS Aero Services, LLC[,] which provides pilot services to numerous businesses and individuals in the Wiregrass Region. ... In 2019, I resigned from employment with Bondy's to work full-time for KDS Aero Services, LLC."

However, in October 2019, in response to an email inquiry from an attorney for Radiance regarding his employment with Bondy's, Sherrill stated: "Hey Gus, not employed there anymore, sorry, haven't been since summer. If ya want I can prolly send you around $100 a month good faith monies til I find something else, just let me know, I check my email periodically. Take care, David[.]" Sherrill's October 2019 email did not mention his "work full-time for KDS Aero Services," his continued provision of services to Bondy's, or his provision of services to any other individual or entity.

In July 2019, Bondy's stopped paying for Sherrill's health-insurance and retirement benefits. The Bondy's comptroller denied that

14

Bondy's had had any involvement in Sherrill's decision to leave his employment or in the formation of KDS Aero Services, although Radiance produced evidence indicating that a law firm that had previously provided services to Bondy's in unrelated matters had also prepared the certificate of formation for KDS Aero Services. The comptroller stated that Sherrill "agreed to continue to provide the 100 anticipated hours of service for Bondy's through an entity called 'KDS Aero[] Services, LLC.'"

In response to a Radiance subpoena requesting Bondy's entire file regarding KDS Aero Services, Bondy's produced four pages showing Bondy's total payments to KDS Aero Services each year from 2019 to June 10, 2022 -- three 1099 tax forms and one computer screenshot. The record includes no contract between Bondy's and KDS Aero Services, no invoices or bills from KDS Aero Services to Bondy's, no records showing services provided to Bondy's by KDS Aero Services, and no instructions regarding how and to whom payments from Bondy's for any services provided by KDS Aero Services are to be made.

On September 6, 2019, Bondy's submitted its letter reporting the termination of Sherrill's employment to the circuit clerk and made no further payments on the garnishment. The letter was dated August 29,

2019, was written on Bondy's letterhead, and was signed by an employee whose position was not identified. The letter was addressed to the Henry Circuit Clerk and stated simply: "To whom it may concern: David Sherrill (case # CV-2017-000001.00) is no longer employed by us. He left our employment on 06/24/2019. If you need any other information, please don't hesitate to call us." The letter includes no indication that it was sent to Radiance. It was filed nearly two months after the time required for giving notice of termination of employment when an employee's wages are subject to garnishment. See § 6-10-7.

On February 14, 2022, Sherrill applied for loan from All In Federal Credit Union to finance his purchase of a vehicle. On the loan application, he identified Bondy's as his sole employer and stated that he had been employed by Bondy's for six years. He listed his position with Bondy's as "Chief Pilot." Sherrill did not mention KDS Aero Services in the loan application. He left the space for "Other Income" blank. Sherrill also stated that he received gross income of $6,167.18 per month and paid no child support. Combined, a gross monthly income of $6,167.18 amounts to an annual gross income of $74,006.16. In tax records for 2021, Bondy's had reported paying KDS Aero Services $74,006.18.

<u>Analysis</u>

Alabama law provides for garnishment under § 6-6-370 et seq., Ala. Code 1975. Garnishment is defined as "process to reach and subject money or effects of a defendant … in the possession or under the control of a third person," and such a third person is called "the garnishee." § 6-6-370, Ala. Code 1975. Section 6-6-371, Ala. Code 1975, directs that the provisions of § 6-6-143, Ala. Code 1975, are applicable to garnishments; therefore, like attachment law, garnishment law "must be liberally construed to advance the manifest intent of the law." § 6-6-143. Radiance refers us to § 6-6-452, which provides:

> "If the garnishee admits the possession of money belonging to the defendant, he must pay the same or so much thereof as may be necessary to satisfy the plaintiff's demand and costs into court to await the order of the court; and, if he fails to make such payment, he is liable as if he had admitted an indebtedness for the amount of such money."

The question presented, then, is whether Bondy's has possession of money belonging to Sherrill.

Both parties rely almost exclusively on the Court of Civil Appeals' decision in <u>Devan Lowe</u>, <u>supra</u>. Radiance argues that the facts of <u>Devan Lowe</u> were similar to those presented here and that the holding of that case supports a finding that KDS Aero Services is a "mere sham," that

Sherrill is actually an employee of Bondy's, and that Bondy's must continue paying on the garnishment. Bondy's, in return, argues that the facts of <u>Devan Lowe</u> are distinguishable and that that case supports the conclusion that, because Sherrill does not perform a function related to the "essence" of Bondy's business, he is an independent contractor and, therefore, Bondy's has no obligation to continue payments on the garnishment.

In <u>Devan Lowe</u>, the defendant, Carl Hubbard, sold cars over the Internet for an automobile dealership, Devan Lowe, Inc. ("the dealership"). Hubbard had arranged for the commissions on his sales to be paid to his wife so that the payments would not interfere with disability benefits he received from the federal government. Uncomfortable with the situation, the dealership's manager encouraged Hubbard to make other arrangements regarding his compensation. Hubbard thus created Dolphin Developers, L.L.C. ("the L.L.C."), and instructed the dealership's office manager to direct funds owed him to the L.L.C. The dealership had no written agreement or contract with the L.L.C. The dealership's office manager did not know if the L.L.C. had a business license, if it was registered to do business in Alabama, or who

18

the owners or officers were. The dealership received no invoices from the L.L.C. for Hubbard's services.

Under the new arrangement, Hubbard no longer received benefits under the dealership's health-insurance plan. The dealership reported his income by means of a 1099 tax form. When the trial court in <u>Devan Lowe</u> received evidence ore tenus, the dealership's office manager testified that Hubbard was no longer an employee of the dealership but admitted that he "performed the same services … he had performed in the past; he was simply compensated for those services through a different entity." 842 So. 2d at 706. Hubbard also continued to receive benefits usually reserved for employees, such as the use of a demonstrator vehicle and a cellular telephone.

After receiving the evidence, the trial court in <u>Devan Lowe</u> entered a final judgment in favor of the garnishor, relying heavily on the fact that the dealership and the L.L.C. had no contract. The dealership appealed. The Court of Civil Appeals applied the ore tenus presumption of correctness to the trial court's factual conclusions and considered two questions: first, whether there was evidence to support the finding that Hubbard was an employee of the dealership and not the L.L.C., <u>see</u> <u>id.</u> at

19

706-07, and, second, whether there was evidence to support the finding that the L.L.C. was a "mere sham or subterfuge." Id. at 707.

Considering the first question, the Court of Civil Appeals noted that Hubbard sold automobiles and that selling automobiles was "the essence of [the dealership's] business." Id. at 706. Thus, that court reasoned, he was not performing a service that lent itself to an independent-contractor payment arrangement. The Court of Civil Appeals then discussed the fact that "nothing significant changed about Hubbard's employment between August when he was employed by [the dealership], and September, when [the dealership] was paying Hubbard's commission to" the L.L.C. Id. He still received health-insurance benefits, albeit under the Consolidated Omnibus Budget Reconciliation Act of 1986 instead of self-paying through the company's family coverage, and he still had use of a dealership vehicle and a cellular telephone. Based on those facts, coupled with the lack of a contract between the dealership and the L.L.C., the Court of Civil Appeals concluded that the trial court had "ample evidence to support the … finding" that the dealership, not the L.L.C., was Hubbard's employer. Id. at 707.

As to whether the L.L.C. was a "sham," the Court of Civil Appeals likewise found that the trial court's conclusion was supported by sufficient evidence. Specifically, it noted Hubbard's admission that he had originally "devised a compensation plan shifting the bulk of his income to his wife to defraud the federal government so that he could continue to receive his full disability benefits." Id. at 707. Moreover, Hubbard created the L.L.C. shortly after entry of the judgment establishing his debt to the garnishor, thus supporting an inference "that the impetus for the formation of the L.L.C. was to evade" the garnishor. Id. Noting that attachment law must be liberally construed and was designed to avoid fraud, the Court of Civil Appeals determined that the evidence presented was sufficient to support the trial court's conclusion that Hubbard had created the L.L.C. to avoid collection on the debt and was, therefore, still employed by the dealership.

The Court of Civil Appeals in Devan Lowe cited Walker v. Carolina Mills Lumber Co., 429 So. 2d 1065 (Ala. Civ. App. 1983), which Radiance also relies on in the present appeal. In Walker, the Court of Civil Appeals reversed a trial court's judgment in a child-support action on the ground that proof of fraud on the part by the debtor alone, and not necessarily

21

collusion by the debtor and the garnishee together, is sufficient to disregard a transfer in avoidance of a debt. In <u>Walker</u>, the debtor had his employer start paying his commissions to his current wife shortly after he had received notice of his former wife's application for a writ of garnishment. The fact that the debtor had intended to hinder collection efforts, the Court of Civil Appeals determined, supported a finding of fraud, and thus, the Court of Civil Appeals held, the trial court should have set aside the assignment of his commissions for purposes of the garnishment without requiring proof of collusion by the employer. <u>Id.</u>

Both parties in this case focus their arguments on a single question: whether Sherrill remained an employee of Bondy's after Bondy's started making payments for his work to KDS Aero Services. Bondy's particularly relies on the language in <u>Devan Lowe</u> regarding the "essence" of the business to argue that Sherrill was an independent contractor. But Sherrill's employment status is not the primary inquiry. <u>Devan Lowe</u> does not stand for the proposition that an independent contractor not engaged in work related to the essence of the business may be free from a garnishment. The Court of Civil Appeals examined the issues raised in <u>Devan Lowe</u> to determine whether the dealership in that

22

case continued to owe funds to Hubbard, the debtor, despite his routing payments for his work to the L.L.C. That was the appropriate inquiry under the garnishment statutes.

The statutory scheme relating to garnishment provides a process to reach money of a debtor "in the possession or under the control of a third person." § 6-6-370. If that third person, the garnishee, "fails to make such payment, he is liable as if he had admitted an indebtedness for the amount of such money." § 6-6-452. The ultimate question before the trial court in this case on the parties' cross-motions for a summary judgment was not whether Sherrill remained an employee of Bondy's. It was whether Bondy's continued to owe money to Sherrill or whether it in fact owed money to KDS Aero Services instead.

As in Devan Lowe, the lack of a contract, invoices, or, indeed, any other records showing the existence of a legitimate relationship between Bondy's and KDS Aero Services is compelling. This apparent lack of a relationship between the two entities certainly creates genuine issues of material fact regarding whether Bondy's payments to KDS Aero Services were in fact owed to Sherrill. This is especially true when the dealings

23

between the two entities is considered together with the other inconsistencies in the record.

The evidence produced supports an inference that both Bondy's and Sherrill were willing to establish an employee relationship in apparent misuse of Bondy's corporate form so that Sherrill could receive benefits for services he provided not to Bondy's, but privately to the Marshall family. Separately, Sherrill represented on a 2022 loan application that he was employed directly by Bondy's and was continuing to receive pay directly from Bondy's, and not from KDS Aero Services. The income reported by Sherrill on the 2022 loan application matched almost to the penny the amount Bondy's had paid to KDS Aero Services in 2021.

Affidavits from Bondy's comptroller and Sherrill emphasize that most of his work was done for others. However, Sherrill failed to disclose any other sources of income in his filings with the trial court, the loan application mentioned above, and his communications with Radiance. Indeed, when Radiance asked about his employment with Bondy's, Sherrill stated that he could make token payments "til I find something," plainly representing that he had not found other employment. Sherrill's statement in this regard conflicts with his affidavit testimony that he had

24

left Bondy's precisely "to work full-time for KDS Aero Services." Further, the record includes Sherrill's conflicting representations to the trial court regarding his state of residence.

Sherrill did stop receiving retirement and health-insurance benefits from Bondy's. Nonetheless, the evidence of Sherrill's misrepresentations in efforts to avoid the debt, his misuse of Bondy's corporate form to receive benefits he seemingly was not entitled to, and the lack of any apparent legitimate business relationship between Bondy's and KDS Aero Services, considered together, create genuine issues of material fact regarding whether Sherrill was engaged in fraud or misuse of KDS Aero Services' corporate form to hide funds owed to him by Bondy's. See Devan Lowe, supra. Even if Bondy's itself was not engaged in some deception, proof of fraud by the debtor alone would be sufficient to set aside any wrongful transfer to KDS Aero Services. See Walker, supra.

Thus, "[t]his instance furnishes an example of a case where neither party has carried its burden on their respective motions and accordingly the issue was not ripe for summary judgment. This follows because we find that the record presents evidence from which the trier of fact might

25

infer that" Sherrill was engaged in fraud or misuse of KDS Aero Services' corporate form to hide funds owed to him by Bondy's. See Amason, 369 So. 2d at 552. Accordingly, the trial court's August 7, 2023, judgment is reversed, and the cause is remanded for further proceedings. See id. at 552-53.

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Stewart, and Mitchell, JJ., concur.